## Lewey's Island Railroad Company *versus* John Bolton.

In order to enforce a liability imposed wholly by statute, the plaintiff must show that the statute has been strictly complied with.

The charter of a railroad company authorized it to sell the shares of delinquent subscribers, and made the subscriber liable for the difference between the proceeds of the sale and the amount due from him. The charter and by-laws required that the subscriber should be notified of the assessments thirty days before the order of the directors to sell the shares, that the sale should be by public auction, at the post office in C., and that the treasurer should give the subscriber a notice in hand signed by the treasurer, or by a director in his behalf; *Held;* —

1. That a notice of the assessment thirty days *before the sale* is not sufficient;
2. That a sale otherwise than by public auction, or at any other place than the post office in C., is invalid; —
3. That a notice of the sale given to the subscriber in hand, not signed by the treasurer or a director, is insufficient.

When a notice is required to be given by posting it in *a conspicuous public* place, it is not sufficient to prove that it was posted in a *public* place.

When the charter of a railroad company authorizes the sale of the stock of a shareholder to pay unpaid assessments thereon, such sale is not valid if it is not for a legal assessment, or if it includes any illegal assessment.

If such charter provides that no assessments shall be laid upon any share to a greater amount than $100, in the whole, any assessment beyond that sum is void.

If the charter fixes a sum as the minimum for the capital stock, no legal assessment can be made until that amount of stock is subscribed in good faith, by men *apparently* able to pay, and for shares to bear their equal part with the others.

A subscription for "preferred stock," which is to draw ten per cent. interest at once, cannot be reckoned to make up the amount of capital stock required by the charter.

On Report from *Nisi Prius,* Goodenow, J., presiding.

The case is fully stated in the opinion.

*F. A. Pike*, for plaintiff.

*G. W. Dyer*, for defendant.

The opinion of the Court was drawn up by

KENT, J. — The writ in this case contains but one count, and, in that, the plaintiffs declare, that the defendant subscribed for two shares in the capital stock of the company; that certain assessments had from time to time been made on said shares; that the defendant, after due notice, had neglected to pay the same; that the treasurer of the company had, according to law, advertised and sold the same for such unpaid assessments to a third party, for a sum less than the sum due, and that the defendant has become liable to pay the difference between the sum due and the sum for which they were sold.

The action is not brought upon the promise in the subscription, to pay the assessments from time to time, as they might be made. It is not upon an open, executory contract to take and pay for two shares. But it is based upon the statute liability, which arises only after legal assessments and a neglect to pay, and a sale for non-payment and a deficiency after applying the proceeds of sale. It assumes, that the defendant is owner of the two shares, and that he has neglected to pay legal assessments, and that his shares have been sold and transferred to another by the company according to the statute and by-laws. To sustain this action for the deficiency, upon the ground of this statute liability, the terms of the statute must be strictly complied with. *Portland & Saco Railroad Co.* v. *Graham*, 1 Met., 1; *Lexington & W. Cambridge Railroad Co.* v. *Staples*, 5 Gray, 522.

The charter of this company, (Private Acts of 1854, c. 217,) authorizes the directors to make assessments, and provides, that "the treasurer shall give notice of all such assessments, and in case any subscriber or stockholder shall neglect to pay any assessment for the space of thirty days after such notice

is given as shall be prescribed in the by-laws of said corporation, the directors may order the treasurer to sell such share or shares at public auction, after giving such notice as may be prescribed as aforesaid, to the highest bidder."

The same section provides that the delinquent subscriber or stockholder shall be held accountable to the corporation for the deficiency.

It appears by the by-laws, adopted by the company, that the notice of assessments may be given by publication, or "by a personal notice from the treasurer of the company," and, in case the directors shall order a sale under the fourth section of the Act, above quoted, the treasurer shall give forty-eight hours notice of the time and place of sale, by posting "notices of the same in two conspicuous public places in the city of Calais, and shall notify such delinquent subscriber, whose stock is to be sold, by leaving or causing to be left a copy of said notice at his place of residence, or by giving him in hand such notice, to be signed by the treasurer or by one of the directors in his behalf."

The directors, on the 11th of December, 1857, by vote, ordered the treasurer to sell the defendant's shares, on account of non-payment of assessments, at auction, on the 18th of December, at the post office in Calais.

1. The defendant objects that there is no evidence that thirty days notice had been given of the assessments before the order to the treasurer to sell. The only evidence on this point is the testimony of the treasurer, who says that "he notified him of all the assessments more than thirty days before *the sale*." This notice might have been less than thirty days before the order to sell. It must appear affirmatively that the defendant had neglected to pay at least thirty days before the order to sell.

2. The order to sell, in accordance with the terms of the charter, was to make sale at public auction to the highest bidder. It does not appear by the testimony of the treasurer, which is the only evidence on this part of the case, that the shares were sold at public auction, or that the notice of sale

contained any reference to a public sale. It does not appear that the sale was at the post office *in Calais*. There are manifest deficiencies in the proof.

3. It does not appear that the notice of the time and place of sale, which the treasurer says he gave defendant in hand, was signed by the treasurer, or by a director, in his behalf.

4. The by-laws of the company require that the notices, of the time and place of sale, shall be posted in "two conspicuous public places" in the city of Calais. The testimony is that they were posted in two *public* places in that city. It was decided in *Bearce* v. *Fossett*, 34 Maine, 575, that an officer's return, that he posted the notices in a *public* place, without saying in a public *and conspicuous* place, as required by the statute, is insufficient. Perhaps, if it had been shown that a notice properly signed had been given in hand to defendant, that fact, as to him, might have been sufficient, notwithstanding the defect in proof as to the posting.

5. It appears from the records of the directors, that assessments had been made from time to time to the amount of $100, each share; and after this, at one time, another assessment of $100, each share, was voted. This last vote was probably passed on the assumption of the invalidity or doubt of the legality of the former assessments. It provides that whatever sum had been *paid* on former assessments should be allowed on the new, towards the payment thereof. But it does not abrogate or disannul the former assessments in terms. The charter provides that "no assessments shall be laid upon any share in said corporation, of a greater amount in the whole than $100." It does not appear whether the shares were sold for non-payment of all the assessments, or only upon the last. It is very clear that a share could not be legally assessed more than $100, or be sold for non-payment of assessments beyond that sum. What was in fact done at the sale, on this point, does not appear. As the records stand, the defendant's shares are assessed $200, each, and stand apparently charged with all, except $10, on each, paid before the last assessment. It should, at least, appear clearly that

the sale was for some legal assessment and did not include any illegal one. *Stoneham Branch Railroad Co.* v. *Gould*, 2 Gray, 277.

The foregoing reasons are sufficient to require us to order a nonsuit, as the case stands. But, as it is possible that these defects might be remedied upon a more minute examination of the records or the witness, we have looked into the other points raised, and are strongly impressed with the conviction that there are insuperable difficulties, beyond those before indicated, in the plaintiffs' case. Without entering minutely into the consideration of all the facts and arguments on the various points, we are not satisfied that the whole of the $200,000, the minimum sum required by the charter as the capital stock, has ever been subscribed within the fair intendment of the statute, It is well settled that such subscription is required before any legal assessment can be made. *O. & L. Railroad Co.* v. *Veazie*, 39 Maine, 571.

It is also settled that the subscription must be made in good faith, by men *apparently* able to pay, and for shares to bear their equal part. *Penobscot Railroad Co.* v. *White*, 41 Maine, 512. It seems to be conceded that the subscriptions by Jones & Rockwood, for 225 shares, were made by men not apparently responsible. The whole number of shares subscribed for on the books appear to be 2557.

We cannot doubt that the subscriptions by the directors and contractor, on book B, for 380 shares, were made under the votes of July 31, and August 4, 1855. By those votes, the shares taken under them, were to be preferred stock, and to draw ten per cent. interest forthwith, and the treasurer was authorized to execute necessary papers to carry the bargain into effect. Such a subscription, with a preference which gave to the shares the place and value of bonds, cannot be regarded as within the intention of the requirement. If we deduct the above shares, 605 from 2557, the remainder is 1952 only. The facts in relation to the last subscription, for 800 shares by the directors, are not very clearly stated in the testimony. Enough however, appears, to raise a very scri-

ous question, whether that subscription was such that the company thereby secured an actual sale of, or a subscription for the 800 shares, to be thereafter held by individuals, who were to bear their proportionate share of the expense incurred by the corporation. According to the agreement of the parties, *Plaintiff nonsuit.*

TENNEY, C. J., RICE, CUTTING and MAY, JJ., concurred.