| 92 | 387 |
| 97 | 721 |
| 92 | 387 |
| 128 | 658 |

# National Commercial Bank *v.* McDonnell.

*Bill in Equity by Policy-Holder, against Stockholders of Dissolved Insurance Company.*

1. *Conclusiveness of former decision, on second appeal.*—By express statutory provision, a former decision of this court is not conclusive on a second appeal, but the court is required to decide the case without regard to the former ruling (Code, § 683a); yet the court will not, on the second appeal, reconsider the questions decided on the first, unless presented by proper assignments of error.

2. *Transfer of stock as collateral security; liability of pledgee to creditors as owner.*—A pledgee of stock in a private corporation, holding the certificates as collateral security, and having had the transfer duly entered on the books of the corporation, is liable to creditors as the owner thereof, on the subsequent insolvency and dissolution of the corporation; and this liability is governed by the law in force

[National Commercial Bank v. McDonnell.]

when their debts were created (Rev. Code, 1867, § 1760), although it had been repealed or abrogated before the stock was transferred to him.

3. *Estoppel against stockholder; forfeiture of charter by corporation.* A stockholder of a private corporation, when sued by its creditors, is estopped from denying the legal existence of the corporation, or insisting that its charter has been forfeited by non-compliance with statutory provisions for which a forfeiture might be judicially declared.

4. *Subscription for stock by husband, in name of wife.*—Under the former statutes regulating the separate estates of married women (Code, 1876, §§ 2705-11), a married woman was incapable of making a contract which would bind her personally, or charge her statutory estate for anything but necessary family supplies, nor could the husband make any such contract in her name; and if he subscribed in her name for stock in a corporation, taking the certificates also in her name, he became liable to creditors as the owner. (CLOPTON, J., dissenting.)

5. *Exceptions to register's report.*—When no exception is made to the ruling or decision of the register under a reference, objection to its correctness can not be raised for the first time in this court.

6. *Interest as against stockholders, in favor of creditors.*—When the creditors of a dissolved corporation seek to enforce in equity the statutory liability of the stockholders, interest begins to run against the latter, not on the filing of the bill, nor on the rendition of the final decree, but on the confirmation of the register's report ascertaining the amount of the creditor's respective claims and the undivided liability of each stockholder.

APPEALS from the Chancery Court of Mobile.

Heard before the Hon. THOS. W. COLEMAN.

There are four appeals embraced in this one record—all involve similar questions, are included in one cause of action, and are decided by one decree of the chancellor.

The bill was filed by the appellees, as creditors; and sought to subject the stockholders of the Ala. Gold Life Insurance Company, an insolvent corporation that had made a general assignment, to a personal liability to the extent of the stock owned by them in said insolvent corporation. The answers, contentions, and accompanying facts, as well as the effect of the decree rendered, are sufficiently shown in the opinion. The chancellor held in his decree that the complainants were entitled to the relief prayed for; and so ordered. It is from this decree that the present appeal is prosecuted, and the same is here assigned as error.

OVERALL & BESTOR, and F. G. BROMBERG, for appellants, filed separate briefs, and cited the following authorities : *McDonnell v. Ala. Gold Life Ins. Co.*, 85 Ala. 401; *Sharpe v Nat. Bank*, 87 Ala. 644; *Ex parte Lehman*, 59 Ala. 632; *Warfield v. Campbell*, 38 Ala. 527 ; *Keyser v. Heitz*, 133 U. S. 138; *State v. Smith*, 15 Pac. Rep. 386; *Anderson v. W. H. Co.*, 111 U. S.

481; *Abbott v. Smelting Co.*, 4 Neb. 416; *McIntire v. Assoc-iation*, 40 Ind. 104; *Mining Co. v. Herkimer*, 46 Ind. 142; *Doyle v. Mizner*, 42 Mich. 332; *Field v. Cooks*, 16 La. An. 153; *Mason v. Pewabic Co.*, 133 U. S. 50; *Fuller v. Rowe*, 57 N. Y. 26; *Fay v. Noble*, 7 Cush. 192; *Parkerburg v. Brown*, 106 U. S. 501; *Loan Asso. v. Topeka*, 20 Wall. 667; *Eaton v. Walker*, 76 Mich. 579; *People v. Nelson*, 46 N. Y. 479; *Tuska-loosa Bridge Co. v. Olmstead*, 41 Ala. 1; *Casey v. Galli*, 94 U. S. 677; *Bowden v. Johnson*, 107 U. S. 252; Cook on Stocks & Stockholders, §§ 245–250; Wait on Insolvent Corp., §§ 337, 385, 470, 561; Morawetz on Corp., §§ 141, 696 (note 3), 748; Thompson on Liabilities of Stockholders, § 25.

G. L. & H. T. SMITH, *contra*, submitted printed briefs, and argued each point discussed in the opinion, and cited the following authorities in support of their arguments: *McDonnell v. Ala. Gold Life Ins. Co.*, 85 Ala. 401; *Lehman v. Meyer*, 67 Ala. 396; *Erwin v. Reese*, 54 Ala. 589; *Havey v. Conoly*, 57 Ala. 179; *Allen v. Montgomery R. R. Co.*, 11 Ala. 451; *Nunn v. Nunn*, 66 Ala. 35; *Barnes v. Carson*, 59 Ala. 188; *Coster v. Thompson*, 41 Ala. 381; *Smith v. Huckabee*, 53 Ala. 195; *Strong v. Taylor*, 82 Ala. 215; *Morton v. N. O. & S. R. R. Co.*, 79 Ala. 624; *Wilkinson v. Searcy*, 74 Ala. 248; *Eslava v. Farley*, 72 Ala. 214; *McGhee v. Lehman*, 65 Ala. 316; *State v. Lott*, 69 Ala. 154; *Lehman v. Glenn*, 87 Ala. 627; *Longley v. Little*, 26 Maine, 165; *Curtis v. Harlow*, 12 Metc. 3; *Middletown Bank v. Magill*, 5 Conn. 64; *Hastings v. Drew*, 73 N. Y. 18; *Child v. Coffin*, 17 Mass. 64; *Boyd v. Appleton*, 8 Mass. 475; *Coleman v. Upton*, 96 U. S. 330; *Mills v. Scott*, 99 U. S. 29; *Richmond v. Irens*, 121 U. S. 56; *Trustee v. Greenbough*, 105 U. S. 527; *Burr v. Wilcox*, 22 N. Y. 557; *Handy v. Draper*, 89 N. Y. 337; *Casey v. Galli*, 94 U. S. 677; *Bowden v. Johnson*, 107 U. S. 263; *Clark v. Barnard*, 108 U. S. 461; *Kennedy v. Gibson*, 8 Wallace, 505; Cook on Stocks and Stockholders, §§ 256–260, 245–247; Thompson on Liability of Stockholders, §§ 90, 223; 2 Morawetz on Priv. Corp., § 852.

CLOPTON, J.—Section 2 of Article XIII of the Constitution of 1868 enjoined: "Dues from corporations shall be secured by such individual liabilities of the corporators, or other means, as may be prescribed by law;" and section 3 declared: "Each stockholder in any corporation shall be liable to the amount of stock held or owned by him." The Alabama Gold Life Insurance Company was incorporated in October, 1868, under and by authority of an act amending section 1755 of the Revised Code, approved August 6, 1868.—Acts 1868,

p. 16. By the amendatory act, life insurance companies incorporated thereunder were brought within the operation of section 1760 of the Revised Code, which declared: "The stockholders of any such corporation are liable for all debts due by it at the time of its dissolution, to the extent of their stock."

The bill is filed by creditors of the Alabama Gold Life Insurance Company, an insolvent and dissolved corporation, and seeks to enforce against the stockholders personally the liability for the corporate debts imposed by the foregoing constitutional and statutory provisions. When this case was before the court at a former term, it was decided that, as to all policies issued prior to December 5, 1875, the date when the present constitution went into effect, the individual liability of the stockholders arose by contract under the provisions of the law then in force, and was not affected or destroyed by section 8 of Article XIV of the present constitution, which provides: "Dues from private corporations shall be secured by such means as may be prescribed by law, but in no case shall any stockholder be individually liable otherwise than for the unpaid stock owned by him or her," or by the statute enacted to give effect to this clause. After the cause was remanded, the register, in pursuance of a decree of reference, ascertained and reported the valid claims against the company, to which no exception was taken, and also who were the shareholders, and the number of shares owned by each. Four of the defendant stockholders have taken separate appeals from the decree adjudging the amounts to be paid by the stockholders respectively. As the appellants have made separate assignments of error peculiar to each appeal, and appellees have assigned cross-errors, we shall consider them *seriatim*.

On the appeal of the National Commercial Bank, counsel for appellant contends, that the individual liability of the bank as a stockholder is not governed by section 1760 of the Revised Code. On the former appeal we held, that the corporation, having carried on business as such uninterruptedly for eighteen years, holding itself out to the public as a corporation, and issuing policies of insurance, accepted by the insured on the faith of such representations, the defendant stockholders are estopped from denying, in a suit by corporate creditors seeking to hold them personally liable for the corporate debts, the legality of its organization, and from assailing the constitutionality of the act under which it claimed to be incorporated, and derived its corporate powers and franchises.—*McDonnell v. Ala. Gold Life Insurance Co.*, 85 Ala. 401. It is true that, under section 683 of the Code, this court,

" in deciding each case, when there is a conflict between its existing opinion and any former ruling in the case, must be governed by what, in its opinion at that time, is law, without any regard to such former ruling." The statute has operation only when the necessity and duty to reconsider the former ruling are devolved on the court by proper assignments of error.—*Stoudenmire v. DeBardelaben*, 85 Ala. 85. There being no assignments of error going to the rulings of the chancellor on the demurrers, we are not required by the statute to open and reconsider the questions decided on the former appeal. The rulings then made must stand as the law of the case.

Appellant's first three assignments of error are based on the ruling of the chancellor on appellant's exception to that part of the register's report finding that appellant was the owner of ninety-five shares of the stock of the corporation, October 6, 1886, when the assignment was made. The first ground on which the bank resists its liability as a stockholder is, that it held the stock as pledgee, or as collateral security for a debt due the bank by A. Proskauer, who originally owned the stock. The facts are: Proskauer being indebted to the bank, delivered in 1881 the stock as collateral security for the debt, indorsing on the certificates a power of attorney authorizing an officer of the bank to transfer the shares on the books of the insurance company. The shares were noted on the stock-ledger as held by the bank, as collateral security. They were transferred on the books, and the certificates issued to Proskauer were surrendered to the company, and new certificates issued, November 14, 1883, to and in the name of the bank, which was entered, and stood on the books of the company as a stockholder, until the company failed, and made the assignment. Winston, the president of the bank, was elected a director of the insurance company, as representing the stock held by the bank, and was such director when the assignment was made.

After observing that a corporation and its shareholders are in reality the same, and when the corporate obligations are created, the company's assets, including the liability of its shareholders on whose behalf they are created, are pledged as security, the general rule is thus stated in 2 Morawetz on Corp., § 852: "It has accordingly been held, that the creditors of a corporation are entitled to hold every legal owner of shares liable as a shareholder, without regard to equities existing between him and third persons, and may enforce not only the liability of such shareholder to contribute the portion of capital subscribed by him to the company, but also may

[National Commercial Bank v. McDonnell.]

further liability to creditors imposed by statute." As to the liability as stockholder of a pledgee of stock, it is said in Cook on Stocks and Stockholders, section 247: "A pledgee of stock —that is, one to whom the stock has been transferred in pledge, or as collateral security, and who has had the stock transferred into his own name on the corporate books—is liable to the creditors of the corporation as though he were the absolute owner of the stock." Omitting a citation of authorities, which may be found in the notes to the sections quoted, we shall be content to make extracts from one or two cases which clearly and emphatically enunciate the correct rule.

In *Wheelock v. Kost*, 77 Ill. 236, it is said: "The legal title to the stock was in appellant by his own procurement, although the equitable title may have been in other parties; but it would be a singular doctrine to hold that the creditor should seek out the equitable owner, against whom to enforce his claim. Primarily, he may proceed against the party in whom is the legal title to the stock. Where shares of the stock in a banking corporation have been hypothecated, and placed in the name of the transferree, he will be subjected to all the liabilities of ordinary owners. It is for the reason the property is in his name, and the legal ownership appears to be in him." And in *National Bank v. Case*, 99 U. S. 628, the rule is laid down as follows: "It is thoroughly established, that one to whom stock has been transferred in pledge, or as collateral security for money loaned, and who appears on the books of the corporation as the owner of the stock, is liable as a stockholder for the benefit of the creditors." One of the reasons given is, "that after having taken the apparent ownership, and thus become entitled to receive dividends, vote at elections, and enjoy the privileges of ownership, it would be inequitable to allow him to refuse the responsibilities of a stockholder."

The bank having voluntarily surrendered the certificates received from Proskauer, and procured the transfer of the shares to be made on the books of the insurance company, and new certificates to be issued in its own name, changed its apparent holding as pledgee to that of legal owner, thereby assuming the relation of stockholder to the company and the creditors, acquiring, as to the former, all the rights, and as to the latter, all the responsibilities of a shareholder. On the undisputed facts, the bank is a stockholder within the meaning of the Constitution and the statute.

It is also insisted, that as, under our former decision, the only claims enforceable against the stockholders individually, are such as existed at the time of the adoption of the present

Constitution; and as the bank did not become the owner of the stock until several years thereafter, no personal liability attaches for such claims on account of the stock. This question was virtually decided adversely to the appellant on the former appeal, where it is said: "The doctrine accordingly is generally asserted, that, when a statute imposes upon stockholders an individual liability for corporate debts, whether to a limited or unlimited extent, this liability enters into the contract of subscription by each stockholder, and forms a part of the security of the creditors of the corporation when the debts are contracted, as fully as if it had been incorporated in the contract, and had been signed by the several subscribers for, or transferrees of such stock." The clause of the Constitution and the statute imposed the liability in general terms— "each stockholder in any corporation shall be liable to the amount of stock held or owned by him;" and "the stockholders of any such corporation are liable for all debts due by it at the time of its dissolution, to the extent of their stock."

In *Curtis v. Harlow*, 12 Metc. 3, construing the words in the statute of Massachusetts, "all the members," the court says: "This clearly and necessarily embraces all persons who are members at the time when the liability is to be enforced. Those who have become stockholders since the date of the contract, are as fully members of the company as earlier associates. The term 'members' must, as we think, be held to include all the actual stockholders; and with their membership they take all the benefits and all the responsibilities which attach to that relation." Under our statute, the liability arises on the dissolution of the corporation, and necessarily attaches to the persons who are stockholders at that time. This conclusion is supported by the weight and current of judicicial decisions.—*Longley v. Little*, 26 Me. 162.

The next ground of exception is, that the insurance company ceased to exist as a corporation long before the certificates were issued to the bank, and being without power to issue them, the bank never acquired, or became the owner of any stock. The argument is, that the company having failed to file with the Secretary of State a certificate within the time required by "An act supplementary to the corporation laws of Alabama," its charter became *ipso facto* void.—Acts 1868, 349. After providing that applications for charters shall be filed with the Secretary of State, the act further provides: "That all corporations heretofore formed under any of the general incorporation laws of this State shall, within sixty days after the passage of this act, file their certificate as herein provided, or their applications shall be void; *provided*, that

anything in this act shall not be so construed as to interfere with any rights of any corporate body of this State heretofore vested." The act was passed November 18, 1868, and the certificate was not filed with the Secretary of State until March 15, 1869.

Without considering the force and effect of the proviso, it suffices to say, that the bank, as a stockholder, is estopped from disputing the existence of the corporation. Also, it is an established principle, that the forfeiture of a charter of incorporation can not be inquired into incidentally or collaterally, until there has been a judicial ascertainment of the forfeiture, and this can only be done in a direct proceeding on the part of the State. The failure to file the certificate within the time required, did not operate, *per se*, to vacate the charter. It may be conceded, that the corporation could not rightfully exist without compliance with the requirement of the statute; but the State, with whom rests the election of acquiescence or waiver, imposed the condition; and the State having waived strict compliance, and acquiesced in the subsequent performance of the condition, a stockholder can not complain.—*Lehman v. Warner*, 61 Ala. 455.

In the cases of A. P. Bush and L. C. Dorgan, the facts are substantially alike, and the questions raised are identical. The amendment of the bill, filed September 5, 1887, exhibited a list of the stockholders on October 6, 1886. In this list Mrs. Bush, wife of A. P. Bush, and Mrs. Dorgan, wife of L. C. Dorgan, appear as the holders of twenty shares each; and they were made parties to the amended bill. Having filed pleas of coverture, the bill was dismissed as to them, and amended so as to aver that the wife of the appellant Bush did not own any of the property as her equitable separate estate, and did not personally subscribe for, or purchase any of the shares, but that her husband subscribed for or purchased them, and caused them to be placed on the books of the company in her name. The amendment of the bill makes substantially the same allegations as to the shares in the name of Mrs. Dorgan. The answers of appellants, which are sworn to, deny that they ever owned the stock held by their wives, or furnished the money to pay for them, and also that the stock was purchased with funds belonging to the wife's statutory separate estate. It will be observed that the bill fails to allege that the wives had no statutory separate estate. The evidence shows that a certificate for ten shares of stock was issued, December 1, 1868, and certificates for the other ten shares were issued February 18, 1882, to Mrs. Bush; and a certificate for twenty shares was issued, April 19, 1875, to Mrs. Dorgan; which stood thereafter

on the books of the company in their names, respectively. Bush and Dorgan each owned thirty-five shares, for which certificates were issued in their names, and the books showed that they were the holders of such shares. On the pleadings and the evidence, the chancellor rendered a decree against each of the appellants for the aggregate amount of the stock held in his own name, and that which stood in the name of his wife. What follows will be understood as the expression of my individual views as to the personal liability of the husbands.

It is conceded that, at common law, when the husband subscribes for stock in the name of his wife, he will be held liable for the subscription as the real owner. The rule rests on the incapacity of a married woman to subscribe for stock, and as she can not make a binding contract, whoever subscribes in her name becomes personally liable. At common law, a married woman has no material rights as regards shares of stock subscribed for, or purchased by her. The statutes in force at the time of the purchase of the stock in question, abrogated the marital rights of the husband as to the wife's statutory separate estate. By the statute, her property was vested in him, not as husband, but as her trustee, and as such he was clothed with large discretionary powers to invest her funds as he deemed most beneficial for her; and if he purchased personal property with her money, taking the title in her name, while as trustee he was entitled to the posession and income, she was the legal owner.—*Evans v. English*, 61 Ala. 416; *Daniel v. Hardwick*, 88 Ala. 557. The husband may invest her money in the stock of incorporated companies, which thus becomes her separate estate, as well as other personal property.

The Supreme Court of the United States, in a recent case, held that a married woman, in the District of Columbia, may become a holder of stock in a National Banking Association, assuming all the liabilities of a shareholder, though the consideration may have proceeded from the husband; and that coverture does not prevent the recovery of a judgment against her for the amount of an assessment levied upon the shareholders to pay the corporate debts.—*Keyzer v. Hitz*, 133 U. S. 138. This conclusion is based on the fact, that the statute imposing the liability on the stockholders makes no exception in favor of married women. Whether, under our statutes, the rules of the common law are displaced, so far as to render a married woman individually liable for the debts of the corporation, and authorize a personal judgment against her, are questions not before us, and as to which we express no opinion. In *Simmons v. Dent*, 15 Mo. App. 288, it was held that,

[National Commercial Bank v. McDonnell.]

under a statute whereby a married woman may become a stockholder, a transfer of stock from the husband to the wife is valid, and relieves him from liability on the stock, the same as though he had transferred it to another person.

That a married woman may become, by a purchase of shares, a stockholder in an incorporated company, under our statutes, can not well be questioned. The liability of the shareholders, additional to the common law liability for unpaid subscriptions, is statutory. Imposing a liability which did not exist at common law, the statute will not be extended by construction, so as to include persons who are not the equitable or real owners of the stock, or in whom the legal title is not vested—who are not stockholders, neither equitably nor legally.—Cook on Stocks and Stockholders, § 214. When money of the wife's statutory separate estate is invested by her husband as trustee in the purchase of stock, he is not the owner, has no beneficial interest therein, and enters into no contractual relations, express or implied, with the corporation. It is true that, under the statutes in force at the time of the purchases of the stock, a married woman had no capacity to make contracts subjecting her to personal liability, or charging her statutory separate estate. But, whether the husband, subscribing for stock in the name of his wife, would be liable for the unpaid subscription, is not the question presented for decision. It may be that he would be liable, under the rule laid down in *Wilder v. Abernethy*, 54 Ala. 644, that no title to property purchased on her credit passes to her, the contract of purchase not being a charge on her separate estate, and if purchased by the husband on the credit of the wife, it became his property. A different question arises, where property is purchased with the separate money of the wife, paid for, a real investment of her funds by the husband as her statutory trustee. In such case, the contract of purchase, the investment, bound the wife. It appearing that, in each case, the stock was purchased by the husband for the wife, in his capacity of trustee under his statutory powers, paid for with the moneys of her separate estate, the certificates issued in her name, standing on the books of the company as the owner holding the legal title, and the husband's name not appearing on the books as the owner, or as holding the stock in trust, he can not be regarded in my opinion, as a stockholder, in the meaning of the constitutional and statutory provisions imposing the additional individual liability. But, as to this conclusion, the other members of the court differ with me, holding that, as a married woman was incapable under the statute of making a contract binding her personally, or charging her statutory separate estate, the common law rule,

which makes the husband, when he subscribes for stock in the name of his wife, personally liable on the subscription, applies, and subjects him to the additional liability imposed by the statute on the stockholders, to the extent of their stock.

Appellants, McMillan & Harrison, assign for error the rendition of any decree against them, and especially to the extent therein adjudged. In their answer they deny that they were the holders of any of the stock of the company, and allege that the seven shares which appear in their names belonged to Owen Farley, and were levied on and sold by the sheriff under an attachment, which they caused to be issued against him; that at the sale some unauthorized person bid off the shares in their name, and a certificate was made out to them, and signed by the officers of the company, but which they never received or accepted. The testimony of Horton, the stock-ledger, transfer-book and certificate make a *prima facie* case of ownership of seven shares, which appellants were called upon to rebut or disprove. They introduced no evidence as to the affirmative matter of defense set up in their answer. Whether appellants were stockholders was the subject of reference before the register, who reported that they were the owners of seven shares; and to his report no exceptions were made. If there was error, it should have been brought to the attention of the chancellor, and a ruling thereon obtained. Failure to file exceptions was tantamount to an admission of the correctness of the report, and no objection thereto can be made for the first time in the appellate court. *Waldrop v. Carnes*, 62 Ala. 374. But a decree was rendered against appellants for a liability to the extent of twenty-two shares, whereas the evidence shows ownership of only seven shares. This was evidently by mistake, but necessitates a reversal of the decree.

From what time interest should begin to run, is a question common to the appeal of the National Bank and the cross-appeal of complainants. The bank contends that the stockholders are liable for interest only from the date of the final decree; and the complainants, that they are liable from the filing of the original bill. On this question the authorities are inharmonious. In South Carolina, Maine and Illinois, interest is not allowed on the amount for which the statute makes the shareholder liable, on the ground that the principal sum is the limit of his liability. In *Burr v. Wilcox*, 22 N. Y. 551, it was held, that interest should be allowed from the time of the commencement of the suit, for the reason that, under the statute of that State, the creditor may select the stockholder against whom he will proceed, and when such selection is

made, a liability is fixed for a specific amount. In *Cleveland v. Burnham*, 64 Wis. 347, it was held that, under the statute of that State, the liability of the stockholder became fixed and certain, and his indebtedness liquidated and due from the date of the judgment, ascertaining that the assets of the corporation had been exhausted, and the balance of the judgment exceeded the amount of the stock. It seems that, in that State, the suit to enforce the statutory liability is commenced against the insolvent corporation and the stockholders, in which judgment is entered, adjudging the amount of indebtedness to the plaintiffs, and applying the assets of the corporation thereto, and further adjudging the several stockholders liable to the amount of stock held by them. In *Casey v. Galli*, 94 U. S. 673, it was held, that under the National Banking Act, the amount to be paid rested in the judgment and discretion of the Comptroller, and when he determined the sum to be paid, and orders its collection, the liability of the shareholder is liquidated, and becomes due and payable, bearing interest from the date of the order. The principle common to all these cases is, that the sum bears interest from the time the liability is liquidated, and a specific amount fixed, though its application may be varied by the provisions of the respective statutes.

Our statute provides, that all contracts, express or implied, for the payment of money, bear interest from the day such money should have been paid.—Code, § 1750. Interest is allowed as compensation for withholding the principal, and follows as an incident from the time the principal is ascertained to be due. The stockholder can not know what sum he is liable to pay, until the claims against the corporation, existing at the time of its dissolution, are judicially ascertained. When this is done, and not until then, the principal becomes due and payable. When, on a bill to enforce the individal liability of stockholders, the register ascertains, on a reference, and reports the valid claims and their amounts, the confirmation of his report of his judicial ascertainment of the claims, and the liability of the stockholders is liquidated and fixed for a specific amount, which becomes a mere matter of arithmetical calculation. The liability, therefore, bears interest, under our statute, from the date of the confirmation of the report. It is evident, that interest was included in the amounts decreed against the stockholders, but from what time it was calculated the record does not inform us. We can not presume error.

We are unable to see what injury the allowance of compensation to the solicitors who filed the bill could possibly work to the appellants who assign this as error. The compensation

[Kennon & Bro. v. Western Union Telegraph Co.]

is to be paid out of the amounts payable to the several creditors, and does not increase or affect in any wise the amounts to be paid by the stockholders. Whether the compensation is allowed or not, their liability remains the same. If there be error, it is without injury to them.

On the appeals of the National Commercial Bank, A. P. Bush, and L. C. Dorgan, the decree is affirmed. Reversed on the appeal of McMillan & Harrison. Appellees take nothing by their cross-assignments of error.