## GLENN *v.* McALLISTER's EX'RS *et al.*

*(Circuit Court, W. D. Virginia. February 17, 1891.)*

1. **Limitation of Actions—Corporate Stock—Assessments.**
   Where there is a decree levying an assessment on the stockholders of an insolvent corporation in respect of their unpaid stock, the statute of limitations does not begin to run against the subscriptions until such decree is rendered.

2. **Corporations—Insolvency—Assessments—Action—Evidence.**
   In an action for such assessment, the decree alone is sufficient to show defendants' liability thereunder, and it is not necessary to put in evidence the whole record in the suit in which it was rendered.

3. **Same—Release of Stockholders—Compromise.**
   Subsequent to the entry of this decree, another was rendered, providing that if the stockholders should, within a given time, pay a certain proportion of their subscriptions, they should be fully discharged from the debts of the corporation, but that, in default of such payment, their liability under the original decree should remain unaffected. *Held*, that a stockholder who failed to take advantage of this decree cannot set it up in an action for the original assessment, as a compromise between the corporation and other stockholders, by which he is released from all liabilities.

4. **Same—Evidence of Subscription.**
   In such an action, the facts that defendant's name appears on the subscription list of the corporation, and that he paid certain assessments on the stock subscribed, are sufficient evidence that he was a stockholder.

In Equity.

*John Howard* and *T. C. Elder*, for plaintiff.

*W. W. Gordon* and *W. C. McAllister*, for defendants.

PAUL, J. This is a suit brought by John Glenn, trustee, of the National Express & Transportation Company, against the excoutors and distributees of the estate of Thompson McAllister, deceased. The bill alleges that Thompson McAllister, about the 1st day of November, 1865, subscribed for 40 shares of the capital stock of the National Express & Transportation Company, of the par value of $100 for each of said shares; that at the time he subscribed for the stock aforesaid he paid to said company 1 per cent. on the amount of his said subscription; that on or about the 8th day of December, 1865, he paid to said company another call or requisition of 4 per cent. on the aforesaid subscription to the capital stock of said company; that on the 20th day of September, 1866, the said National Express & Transportation Company executed a deed of trust for the benefit of its creditors; that by a decree of the chancery court of the city of Richmond, in a suit therein pending in the name of Glenn's administrator, etc., against the National Express & Transportation Company and others, an assessment of 30 per cent. on the par value of each share was decreed against the holders of the unpaid capital stock of said company, and the said John Glenn, trustee, was directed to collect the same, and apply the proceeds to the payment of the debts of said company; and in an amended and supplemental bill it is alleged that, by a further decree in said cause of Glenn's administrator, etc., against the National Express & Transportation Company, rendered on the 26th day of March, 1886, by the circuit court of Henrico county, Va., to which the said cause had been removed, a further assessment of 50 per cent. on the par value of each share was decreed against the holders of the unpaid stock of said company; that no part of said assessments upon the unpaid stock of said Thompson McAllister has ever been paid; and the bill prays for a decree against his estate for the amount thereof.

The defendants file their answers to the original and amended and supplemental bills, in which they set up the following defenses: *First*, that the demands are barred by the statute of limitations; *second*, the plea of *nul tiel record*, alleging that the whole of the proceedings in said cause in which the said decrees were rendered should have been produced and made part of plaintiff's original and amended and supplemental bills; *third*, that, even if Thompson McAllister was a stockholder in said company, he was released from all obligations as such stockholder, by reason of a compromise or compromises made by said company with other of its stockholders prior to the rendition of any of said decrees; and, *fourth*, the defendants deny that Thompson McAllister ever was a subscriber to the capital stock of said company.

As to the first ground of defense, namely, the statute of limitations, which in Virginia, for money demands of this character, is five years, the record shows that the first assessment, of 30 per cent., was made by the decree rendered December 14, 1880; and that the second assessment.

of 50 per cent., was made by a decree rendered March 26, 1886; and that this suit was commenced on the 8th day of December, 1885. It is well settled that the statute of limitations does not commence to run, as against subscriptions to capital stock, payable as called for, until a call or its equivalent has been had. *Hawkins* v. *Glenn*, 131 U. S. 319, 9 Sup. Ct. Rep. 739; *Lewis' Adm'r* v. *Glenn*, 84 Va. 947, 6 S. E. Rep. 866; *Lehman* v. *Glenn*, (Sup. Ct. Ala.) 6 South Rep. 44. The first assessment made in this cause being on the 14th of December, 1880, and this suit being commenced within five years of that date, the plea of the statute of limitations cannot be sustained.

As to the second ground of defense, namely, the plea of *nul tiel record*, alleging that the whole of the proceedings in said cause in which said decrees of assessment were rendered should have been produced and made part of plaintiff's original and amended and supplemental bills, the court is very clearly of opinion that it is not necessary that the whole of the record of the chancery cause of Glenn's administrator against the National Express & Transportation Company, in which the decrees were rendered on which this suit is based, should have been made part of the original and amended and supplemental bills in this suit. The decrees, which are made part of the original and amended and supplemental bills, are binding upon the stockholders, and are not open to collateral attack. They fix the liability of the stockholders for unpaid stock due to the corporation, and decree assessments for the payment of the same. These decrees themselves are conclusive on the stockholders as to all matters involved in the suit in which they were rendered, and no further part of the record is necessary, as evidence in this cause, to establish the liability of the defendants. *Hawkins* v. *Glenn*, 131 U. S. 319, 9 Sup. Ct. Rep. 739. The following decisions clearly sustain this position:

"A decree of partition being a necessary link in a chain of title, if the decree and the report of the commissioners appointed to divide the land on which the decree is based sufficiently designate the land referred to in the decree, they are competent evidence, without the production of the whole record." *Wynn* v. *Harman's Devisees*, 5 Grat. 157.

"On the trial of an action of debt on an injunction bond, extracts from the record of the injunction case, of the decrees in the cause, are competent and sufficient evidence without producing the whole record." *White* v. *Clay's Ex'rs*, 7 Leigh, 68.

"It is not necessary that the administratrix of the high sheriff shall produce the whole record of the cause in which he was subjected to liability for the default of the deputy. It is sufficient to produce as much thereof as shows the fact, and in this case the judgment was sufficient; that and its recitals being *prima facie* evidence against the deputy and his sureties." *Cox* v. *Thomas*, 9 Grat. 312.

"The plea of *nul tiel record* brings before the court the validity of a judgment on which an action is brought, and the description of it as set forth in the declaration." 24 Myer's Fed. Dec. 629, quoting *Bergen* v. *Williams*, 4 McLean, 125. "*Nul tiel record* can only put in issue the fact of the judgment."

As to the question of the release of defendants on the ground that, before the rendition of any of the decrees, compromises had been entered

into with a number of the stockholders of the National Express & Transportation Company. This defense can have reference only to the decree rendered July 21, 1883, which decree provided that, by consent of parties to the cause in which it was rendered—

"John Glenn, trustee, on the payment to him within six months of the date of this decree by any of the subscribers to the stock of the defendant company, or by any other person claimed to be liable on account of said stock, of twenty-five per cent. of the original amount of said subscription, with interest thereon at the rate of six per cent. per annum from thirty days from the date of this decree, with any cost incurred heretofore, or by said trustee in any suit brought by him heretofore, or which may hereafter be brought, before tender of said twenty-five per cent. under this decree, to recover of such stockholders, or other party the amount for which he may be responsible on said stock under the decree in this cause, shall execute a receipt therefor to operate as a full acquittance and discharge of all persons on account of such subscriptions, both of the original subscribers thereto and of any assignee thereof."

This same question was presented before the supreme court of appeals of Maryland in the case of *Hambleton* v. *Glenn*, and decided adversely to the claim now made by the defendants in this cause, the court saying:

"But the defendants not only failed or refused, within the time prescribed, to avail themselves of the liberal offer of compromise and settlement authorized by the court, but they have not even made proffer by their plea to accept and comply with the terms of the decree. They allege that because some of the stockholders did elect to accept the terms of the settlement offered, and paid the amount specified, thereby other stockholders and persons liable on the stock were released from all further liability. But is that the legal effect from this compromise decree, making offer of terms of settlement to every one alike who were liable on the stock of the company? We think not. The assessment made by the decree of December 14, 1880, was of a certain per cent. upon each and every share of stock; and each person liable therefor became severally liable, and not jointly liable with others. The failure to collect from some could not discharge others. All that each individual stockholder could insist upon was that the assessment should be equal and uniform upon all the stock alike, and that it should not exceed what was required for the payment of the debts of the company. But these were questions for the chancery court of Virginia, and they have been finally determined and adjudicated upon by the decree of December 14, 1880, and there is no power in this court to review that decree. The compromise decree was entered nearly three years after the assessment of the thirty per cent. per share was levied, and the liability of the defendants fixed, and there is no allegation or pretense that the liability of defendants for the thirty per cent. call has been enlarged by the compromise effected with some of the stockholders. Moreover, the compromise decree of July 21, 1883, did not suspend or stay the operation of the original decree of December 14, 1880; but, in express terms, it declared that such original decree should not be suspended in its operation. Each person liable upon the stock of the company had his right of election given whether he would accept the terms of the compromise or not; but, until he did accept and comply with the terms of the decree, he remained bound for the assessment imposed by the original decree of December 14, 1880." 20 Atl. Rep. 115.

The court is of opinion that in this decision the supreme court of appeals of Maryland has correctly stated the law as applicable to this question.

The fourth and last ground of defense to be considered is the denial on the part of the defendants that Thompson McAllister was ever a stockholder in the National Express & Transportation Company. The law is now well established that—

"A person is presumed to be the owner of stock when his name appears on the books of a company as a stockholder; and when he is sued as such the burden of disproving that presumption is cast upon him." *Turnbull* v. *Payson,* 95 U. S. 418; *Glenn* v. *Springs,* 26 Fed. Rep. 494; *Vanderwerken* v. *Glenn,* 85 Va. 9, 6 S. E. Rep. 806; *Glenn* v. *Orr,* (Sup. Ct. N. C.) 2 S. E. Rep. 538.

The court in the case last cited says:

"The rule of evidence underlying this and similar decisions seems to be founded in convenience, and to rest upon the further ground that corporations in this country are the creatures of statute, with prescribed rights and powers, subject, to an important extent, to public control and supervision, and are therefore to exercise their powers as allowed and required by law, and to keep their records accordingly and truly."

The evidence shows that the name of Thompson McAllister appears upon the books of said National Express & Transportation Company; that an assessment of 1 per cent. upon the par value of each share was paid at the time the 40 shares of stock standing in his name were subscribed for; and that an additional assessment of 4 per cent. upon the par value of each of said shares was paid, as called for, on the 5th of December, 1865; the latter, as the evidence shows, being paid by check of John Echols, who, as the evidence shows, was a particular friend of said Thompson McAllister, which check embraced the assessments of said Echols and Samuel C. Luddington and said Thompson McAllister.

To disprove the presumption that said Thompson McAllister was a stockholder in said company, the defendants introduced testimony proving that the name of said Thompson McAllister, on the original capital stock subscription list of said company, was not in the handwriting of said Thompson McAllister. The evidence shows that it was in the handwriting of P. T. Moore, then secretary of said company. The entries upon the books of said company, which refer to the account of said Thompson McAllister as a stockholder in said company, are all proven to be in the handwriting of J. V. H. Allen, who succeeded the said P. T. Moore as secretary, and was also treasurer of said company. In some of said entries, subsequent to the first entry of December 15, 1865, the name is written "Thompson C. McAllister," the "C." being crossed out; but the name is manifestly that of the same person, the Christian name Thompson being an unusual one, and the insertion of the initial letter "C." being merely inadvertent. The only other evidence offered by the defendants is the deposition of William M. McAllister, one of the executors of the said Thompson McAllister and defendant in this cause. His testimony is objected to by the plaintiff as inadmissible under the provisions of section 851, Rev. St. U. S.; but, if admitted, it is merely of a negative character, and could not disprove the presumption that said Thompson McAllister was a stockholder in said National Express & Transportation Company; it being proved that all the entries relating

to his being a stockholder in said company were regularly made, in due course of business, by the proper officers of said company. The court is of opinion that the estate of said Thompson McAllister is liable for the unpaid assessments upon the 40 shares of the capital stock of the said National Express & Transportation Company subscribed for by him, and a decree will be entered accordingly.