[No. 6301. Decided September 27, 1906.]

THE STATE OF WASHINGTON, *on the Relation of Henry J. Biddle et al., Plaintiff,* v. THE SUPERIOR COURT FOR CLARKE COUNTY, *Respondent.*[1]

EMINENT DOMAIN—CORPORATIONS—STATUTORY REQUISITE OF SUBSCRIPTIONS TO STOCK—EVIDENCE—STOCK BOOKS   The properly identified stock books of a railway corporation, showing the names of the subscribers of all the capital stock, is presumptive evidence that all the stock was subscribed, as required by Bal. Code, § 4250, to entitle the railway to condemn land for right of way.

SAME—SUBSCRIPTION BY TRUSTEE.   A subscription to the capital stock of a corporation by one subscribing as trustee, shows a liability to pay therefor and is a sufficient subscription, in the absence of want of good faith or insolvency, to entitle a railway to condemn land for a right of way.

[1] Reported in 87 Pac. 40.

RAILROADS—LOCATION OF LINE—CORPORATIONS—EXTRA-TERRITORIAL
ACTS—ADOPTION. Where a domestic railway corporation adopted its
line of location at a meeting of the directors held in another state,
the subsequent bringing of condemnation proceedings in this state
for a right of way along the same line amounts to an adoption of
the corporate action taken outside of the state.

EMINENT DOMAIN — DAMAGES — ASSESSMENT — ENTIRE TRACTS.
Where, in a condemnation proceeding, the defendants expressly raise
the point that the tract across which condemnation is sought is only
part of an entire farm used as one tract, they are entitled to have
the entire tract considered as a basis for estimating their damages.

Certiorari to review a judgment of the superior court for
Clarke county, McCredie, J., entered June 15, 1906, after a
hearing on the merits, adjudging a public use etc., and di-
recting the assessment of damages for a railroad right of
way. Modified.

*Donald McMaster, Teal & Minor,* and *J. W. Robinson,* for
relators.

*James B. Kerr* and *Geo. T. Reid,* for respondent.

HADLEY, J.—An order to show cause why a writ of review
shall not issue to review the proceedings of the superior court
of Clarke county in certain railway condemnation proceed-
ings was made by this court July 11, 1906. The petitioner
for the condemnation is the Portland & Seattle Railway Com-
pany, a corporation organized under the laws of this state.
The petitioner seeks to condemn a strip of land one hundred
feet in width across the lands of Henry J. Biddle and wife
for right of way purposes. Certain lands are described in
the petition as comprising the entire tract of the defendants
through which the railway line has been located. The de-
fendants' answer admits the ownership of the land described
in the petition, but alleges that they are the owners of a
larger tract which is described as including what is mentioned
in the petition, and that the whole of the larger tract de-
scribed in the answer is owned and occupied by them as an
entire tract as their farm and home. They allege that in

order that their compensation may be fully ascertained, it is necessary to determine the damage to the entire tract owned by them considered as a whole. The answer also puts in issue the averments of the petition with reference to the legal capacity of the petitioner to condemn. A hearing was had, testimony was submitted upon the question of public use and necessity, and the court found that the contemplated use for which the land is sought to be appropriated is a public use, and that the public interests require its appropriation. An order was entered condemning a strip of land one hundred feet in width, the same being fifty feet in width on either side of the center line of the petitioner's location as staked out over and across the land described in the petition. It was also ordered that the damages should be ascertained by a jury, in July, 1906. Before any hearing was had upon the subject of damages, the order to show cause herein was issued, and further proceedings were stayed. The record was certified to this court, together with a bill of exceptions. A hearing was had thereon, and this court finds that the record presents a proper case for the writ of review.

The defendants first contend that the petitioner did not show that it is authorized to prosecute a condemnation proceeding. The proof showed the regular incorporation of the petitioner as a railway company. It is contended, however, that the evidence did not show compliance with the following provision in Bal. Code, § 4250: "Provided, that no such corporation shall commence business or institute proceedings to condemn land for corporate purposes until the whole amount of its capital stock has been subscribed." The books of the corporation, properly identified, were introduced to show that the entire capital stock had been subscribed. The evidence offered we think was competent for that purpose. It is generally held that when one's name appears upon the books of a corporation as a subscriber for stock it is presumptive evidence that he is such, in the absence of other evidence to rebut the presumption.

"The records of a corporation are competent and suffi-
cient evidence to prove subscriptions to its capital stock and
to show whether or not the number of shares required by its
charter have been subscribed, where no proof is introduced
to destroy their effect. If it is shown that a person's name
appears on the subscription or stock book of a corporation
as a subscriber or stockholder, or upon the books of com-
missioners appointed to receive subscriptions, this is *prima
facie* proof that he is a subscriber or stockholder." 2 Clark
& Marshall, Private Corporations, § 454.

In *Turnbull v. Payson*, 95 U. S. 418, 24 L. Ed. 437, the
court said:

"Taken as a whole it is clear that the evidence offered was
amply sufficient to warrant the jury in finding that the de-
fendant was a stockholder as alleged. Where the name of
an individual appears on the stock book of a corporation
as a stockholder the *prima facie* presumption is that he is
the owner of the stock in a case where there is nothing to
rebut that presumption; and in an action against him as a
stockholder, the burden of proving that he is not a stock-
holder, or of rebutting that presumption, is cast upon the
defendant."

The above-stated rule is also supported by the following au-
thorities: *Glenn v. M'Allister's Executors*, 46 Fed. 883;
*Glenn v. Orr*, 96 N. C. 413, 2 S. E. 538; *Liggett v. Glenn*, 51
Fed. 381; *Marlborough Branch R. Co. v. Arnold*, 9 Gray
159, 69 Am. Dec. 279; *Rockville etc. Turnpike Road v. Van
Ness*, Fed. Cas. No. 11,986: 1 Cook, Corporations (5th ed),
§ 55 and cases cited.

It is further contended that the records of the corpora-
tion admitted in evidence did not sufficiently show a subscrip-
tion for all the capital stock. The articles of incorporation
show the capital stock to be $5,000,000, divided into fifty
thousand shares of $100 each. The subscription for the
stock, as shown by the records, is as follows:

"We, the undersigned, hereby severally subscribe for the
number of shares of the capital stock of the Portland and
Seattle Railway Company set opposite our respective names

and signatures, and agree to pay to the Portland and Seattle
Railway Company one hundred dollars upon each share so sub-
scribed.

| Name of Subscriber. | No. of Shares. | Amount. |
| --- | --- | --- |
| C. M. Levey, Trustee | 49,995 | $4,999,500.00 |
| J. C. Flanders | 1 | 100.00 |
| C. F. Adams | 1 | 100.00 |
| S. B. Linthicum | 1 | 100.00 |
| John S. Baker | 1 | 100.00 |
| James D. Hoge | 1 | 100.00" |

It will be observed that the subscription for the entire capi-
tal stock except $500 was made by C. M. Levey, trustee. It
is contended that the subscription by Mr. Levey as trustee is
not binding upon him personally, and is not a compliance
with the requirements of the statute. The case of *Livesey
v. Omaha Hotel Co.*, 5 Neb. 50, is cited. That case was, how-
ever, decided upon the theory that it was not shown that a
condition precedent necessary to bind the subscriber had been
performed. That condition was that a given amount of stock
should be subscribed before liability attached. The same was
true in *Oldtown etc. R. Co. v. Veazie*, 39 Me. 571, also cited.
*Penobscot R. Co. v. White*, 41 Me. 512, 66 Am. Dec. 257,
is cited. It was held in that case that, in order to show the
absence of a full subscription, testimony on the part of a
subscriber was admissible which tended to show that the sub-
scriptions were not made in good faith. *Lewey's Island R.
Co. v. Bolton*, 48 Me. 451, 77 Am. Dec. 236, is also cited.
That case was decided upon the theory that certain statutory
regulations must be observed before collection may be en-
forced against the subscriber. The statute required that
notice of assessments should be given, and if any subscriber
or stockholder, neglected to pay for the space of thirty days
after notice, the shares should be sold at public auction to
the highest bidder, and the delinquent subscriber was ac-
countable to the corporation for the deficiency. The last
case cited by the defendants upon this subject is *Phillips v.
Covington etc. Bridge Co.*, 2 Met. (Ky.) 219. It was held

in that case that, in determining whether the full amount of capital stock had been subscribed, the unpaid subscriptions of persons who were insolvent, or infants, or married women, at the time of making them, should be excluded from the computation.

The above decisions do not reach the point presented in the case at bar. The evidence shows subscriptions for the full amount of the capital stock, and there is neither evidence of want of good faith nor that any of the subscriptions were made by or in behalf of persons who were insolvent or under disability. Does the stock subscription show a liability to pay for all the stock? We think it does. In *Cole v. Satsop R. Co.*, 9 Wash. 487, 37 Pac. 700, 43 Am. St. 858, it was held that, when the subscription to the stock is made by one as trustee, an action to recover may be maintained against the real parties in interest when the subscription is made by the trustee as agent for others. It is also the rule that, when an agent contracts for or on behalf of an irresponsible principal who does not possess the attributes of a legal entity, or when he signs a contract professing to be signing as agent when he has no principal existing at the time, the agent is himself liable on the contract. 1 Am. & Eng. Ency. Law (2d ed.), 1122. In *Johnston v. Allis*, 71 Conn. 207, 41 Atl. 816, it was held that, where one had subscribed for stock as trustee and it transpired that the undisclosed principal was not bound, the subscriber himself was personally bound. To the same effect are the following cases: *State ex rel. Page v. Smith*, 48 Vt. 266; *National Commercial Bank v. McDonnell*, 92 Ala. 387, 9 South. 149. It follows that Mr. Levey's undisclosed principals must be liable on this subscription, or that he himself must be liable. As bearing upon the question of responsibility and good faith, the evidence shows that about $2,000,000 has already been expended by this corporation in construction work. Since the aggregate liability outside of Mr. Levey's subscription is but $500,

it is therefore manifest that either the undisclosed principals or the trustee must have already paid large sums on the subscription.

It is argued that sufficient adoption of the line of location has not been shown to enable the petitioner to condemn. The petitioner is a Washington corporation, and the proof showed that the line of location was first adopted by a meeting of the board of trustees held in the city of Portland, Oregon. It is contended that the corporation could not thus act without the boundaries of the state of Washington, and many authorities are cited to sustain the argument. Whatever might be said upon the merits of this question in some cases, yet the evidence in the case at bar shows that the line of location as adopted at the Portland meeting includes the route now sought to be condemned, and the bringing of this condemnation proceeding by the corporation itself within this state is such an act of the corporation as amounts to an adoption, and we think eliminates any question of extra-territorial acts in that regard.

It is also urged that the line of location of the railway across the defendants' land is not shown with sufficient definiteness. We think the testimony of the chief engineer and the maps and charts in evidence show the location with sufficient certainty. It is also insisted that the testimony does not show the necessity for appropriating a strip one hundred feet in width, and that not to exceed sixty feet in width is required. We think it reasonably appears that one hundred feet is necessary, and that the court did not err in ordering the condemnation of that amount.

It is next insisted that the court erred in its description of the land, in its order adjudicating the necessity for appropriation and calling a jury. It will be remembered from the statement of the case that the order describes the land, damages to which are to be ascertained, as the same tract which is described in the petition for condemnation. The

answer, however, avers that other land not described in the
petition is a part of the same tract, and that all of the land
is occupied and used by the defendants as an entirety for
their home. The testimony shows that the defendants own
all the land described in their answer, and that it constitutes
their farm. A public highway crosses the farm, running in
an easterly and westerly direction. The residence and a part
of the farm buildings are situate on the south side of the
highway, but a barn is located on the north side. The rail-
way company in its petition described only the land on the
north side of the road, and the order of condemnation de-
scribes the same. We think it manifest that the defendants
use and occupy all the land as a whole as one undivided farm.
The uses to which they put all this land situate in one body
except that it is crossed by the highway, comprise all the
combined arrangements for carrying on the business of a
single farm. Inasmuch as the defendants expressly raised
this question by their answer, and described the whole tract
as the damaged one, we think they are entitled under the evi-
dence to have the entire tract described in the answer con-
sidered as one, as a basis for estimating their damages, within
what was said by this court in *Northern Pac. etc. R. Co. v.
Coleman*, 3 Wash. 228, 28 Pac. 514. At the hearing the
court was asked to describe the entire tract in the order of
condemnation as the land to be considered in the ascertain-
ment of damages. Thereupon the court remarked as fol-
lows: "Without passing on that now particularly, I would
say that if it is one contiguous tract it will have to be in-
cluded. I presume it is one tract of land." The order
entered, however, described the smaller area only. The court
seems to have inclined to the view that the larger area is
the tract to be considered, but must have been of the further
opinion that the matter presented involved a mere rule of
evidence to be determined upon the trial for the ascertain-
ment of damages. Otherwise it would seem that the court

would have passed upon the question, as it was squarely presented by the pleadings and evidence upon the hearing for the condemnation. While it does involve a rule of evidence, yet the order of condemnation as made would at least afford the basis for the contention that the inquiry as to damages must be confined to the smaller area. We therefore think the court should have passed upon the point directly and should have made its order accordingly. In this particular the order should be modified, but in all other respects it is affirmed, and the defendants are entitled to recover their costs upon this review.

The cause is remanded with instructions to proceed in accordance with this opinion, and to ascertain the damages.

MOUNT, C. J., DUNBAR, ROOT, and CROW, JJ., concur.

FULLERTON, J., concurs in the result.