## AMASA C. HALL *vs.* CHARLES W. BRADBURY.

A promissory note was signed "B. F. Fisher, agent," and nothing on its face indicated who the principal was. Held that demand of payment on Fisher personally was sufficient, and that a demand on his principal was not necessary.

And held that it made no difference that Fisher had ceased to be agent for the principal before the note fell due.

An agent, to save himself from personal liability, must contract in the name of his principal, or in some other mode point him out as the party contracting.

A person is not liable, directly or indirectly, for the effect of representations honestly made, to a party seeking information as to the pecuniary standing. of another, where he has no interest in the matter, although the representations may turn out to be untrue.

ASSUMPSIT, by an endorsee against an endorser of a promissory note ; brought to the Court of Common Pleas of New London county, and tried to the jury, on the general issue, with notice, before *Willey, J.*

Hall *v.* Bradbury.

On the trial the plaintiff offered in evidence the following note, being the one described in the declaration:

$260.00.    Norwich, Ct., April 7th, 1871.    Three months after date I promise to pay to the order of Chas. W. Bradbury, Two Hundred and Sixty Dollars, value received.

B. F. FISHER, Agent."

Endorsed, " CHAS. W. BRADBURY, GEO. O. NELSON."

The plaintiff also claimed to have proved that the note was discounted at the First National Bank, in Norwich, after being endorsed by the plaintiff, and that the cashier of the bank, who was also a notary public, made a demand on B. F. Fisher in person, and also called at the residence of George O. Nelson, who was temporarily absent from the city at New Haven, and left a notice of the dishonor of the note.

The defendant offered evidence to prove, and claimed to have proved, that the note in suit was executed by B. F. Fisher, as agent for George O. Nelson, who was doing business under the name of B. F. Fisher, agent, both of whom were residing in the city of Norwich, and continued to reside there till after the note fell due, and that the plaintiff knew when he received the note that it was executed by Fisher as the agent of Nelson; also that Fisher ceased to be the agent of Nelson before the first day of June, 1871, and was not at any time thereafter his agent. The defendant thereupon requested the court to charge the jury, that if they should find that Fisher executed the note as the agent of George O. Nelson, and that that fact was well known to the plaintiff, and that before the 1st day of June, 1871, Fisher ceased to be the agent of Nelson and was not his agent thereafter, then it was the duty of the plaintiff to make demand of payment of Nelson, and that if the jury should find that no demand of payment was made on Nelson, then their verdict should be for the defendant.

The court did not so charge the jury, but charged them that as the note was signed " B. F. Fisher, agent," a demand on B. F. Fisher, the person who signed the note, was a sufficient demand of payment.

The defendant also offered evidence to prove, and claimed

to have proved, that the defendant was only an accommodation endorser, and did not receive any of the proceeds of the note, and that the plaintiff knew that such were the facts before he received the note; that the defendant declined to endorse the note at the request of Fisher, who was acting as the agent of Nelson, being doubtful as to the responsibility of Nelson; that Fisher thereupon referred the defendant to the plaintiff for information as to Nelson's responsibility, and that the defendant called on the plaintiff for the purpose of obtaining the information, with a view to endorse the note or not as he should find him to be responsible or not, and stated to the plaintiff that he had called on him for that purpose, and asked him if he knew Nelson and what the fact was about his responsibility, and that before he endorsed the note the plaintiff told him that Nelson was perfectly good and was doing a good business, and that he would never have any trouble if he endorsed the note; that the defendant in consequence of, and relying on, these representations of the plaintiff, endorsed the note and delivered it to Fisher, and that he would not have endorsed it had it not been for the fact that the plaintiff made, and he relied on, the representations; and that the representations were untrue and that Nelson was at the time insolvent and a bankrupt.

The defendant also offered evidence, and claimed to have proved, that at the time the plaintiff made these representations he knew that they were false, and that there was an intentional fraud practised on him by the plaintiff and Fisher.

The plaintiff objected to the introduction of all this evidence, but the court admitted it, and thereupon the plaintiff introduced proof that the note in suit was simply the renewal of a former note for the same amount, dated January 7th, 1871, at three months, like the present note in all respects except that it was made payable to the order of George O. Nelson, and was endorsed by Nelson first and by the defendant after him. The plaintiff also denied making the representations claimed by the defendant, and that he had any

knowledge at the time of the making of the note of the insolvency of Nelson.

The defendant thereupon requested the court to charge the jury, that "if they found that before the defendant endorsed the note, the plaintiff was sought for by him at the request of Fisher the agent, for the purpose of obtaining information as to the responsibility of Nelson, with a view to endorse or not to endorse the note, and that he saw the plaintiff and stated to him for what purpose the information was sought, and that the plaintiff, before the defendant endorsed the note, represented to him that Nelson was perfectly good, and was doing a good business, and that he would never have any trouble if he endorsed the note, and that by reason of such representations the defendant endorsed the note, and would not have endorsed it but for such representations, and that the representations were untrue, and at the time they were made, Nelson was in fact insolvent, then their verdict should be for the defendant."

The judge charged the jury in the language requested, but added that it was incumbent on the defendant to prove, in order to entitle him to a verdict, that the plaintiff at the time he made the representations knew them to be false.

The jury returned a verdict for the plaintiff, and the defendant moved for a new trial for error in the charge of the court.

*Lucas*, in support of the motion.

1. A demand of payment upon Fisher was not a demand on the maker of the note. It is true the note was signed "B. F. Fisher, Agent," but that was the name Nelson was doing business under. All that can fairly be claimed is that Fisher, acting for Nelson, signed Nelson's business name to the note. Nelson was as much the maker of the note as he would have been if he had written the signature with his own hand, and even if Nelson had not been doing business under that name the note was undoubtedly the note of Nelson, and not Fisher's, and the law of this state is well settled that the defendant had a right to show this. 1 Swift Dig., 325; *Shelton* v.

*Darling*, 2 Conn., 435; *Hovey* v. *Magill*, id., 680; *Magill* v. *Hinsdale*, 6 id., 464; *Johnson* v. *Smith*, 21 id., 632; *Pease* v. *Pease*, 35 id., 131.

2. The court charged the jury that the demand of Fisher was sufficient. That was an error. Fisher it is true, as the agent of Nelson, signed the note, but when the note fell due, and long before that, he had ceased to be his agent. What then is there in the case showing that he is the person on whom demand for payment should have been made ? If I authorize *A* to sign my name to a note, who is to pay it, *A* or or myself? And if I am to pay it, am I not the person on whom the demand should be made ? It is not pretended that any demand was made on Nelson. It is of no importance that notice of the dishonor of the note was left at his house. That cannot take the place of a demand of payment.

3. This court, in a recent and well considered opinion, *Dale* v. *Gear*, 38 Conn., 18, has held that, as between endorser and endorsee, an antecedent state of facts from which a controlling equity arises, may be pleaded and proved by parol in bar of an action. To hold otherwise would be to hold that the law may be used as a means of great injustice. The court below erred in supposing that to establish a " controlling equity " it was necessary for the defendant to show deliberate fraud on the part of the plaintiff, and such conduct as would sustain an averment of false representation in an action on the case, and especially erred in instructing the jury that it was " incumbent on the defendant to prove, in order to entitle him to a verdict, that the plaintiff at the time he made the representations *knew them to be false.*" Instead of the defendant being required to prove that the plaintiff knew the representations to be false, the plaintiff was estopped by his conduct from showing a want of knowledge which he designedly assumed to possess, having by that very assumption of knowledge designedly and wrongfully caused the defendant to believe in a certain state of things, and to act upon that belief as he would not otherwise have done. *Roe* v. *Jerome*, 18 Conn., 153; *Preston* v. *Mann*, 25 id., 128; *Simons* v. *Steele*, 36 N. Hamp., 73, 79.

*Pratt,* contra, cited, as to the sufficiency of the demand, 1 Parsons on Notes and Bills, 92 to 96, and 361 ; and as to the representations of the plaintiff not being of such a character as to create an estoppel, *Danforth* v. *Adams,* 29 Conn., 107.

CARPENTER, J. This action is brought by an indorsee against an indorser of a promissory note. The note was signed, " B. F. Fisher, agent." Nothing on the face of the note indicated who the principal was, and it was not payable at any particular place. When the note fell due the holder made demand of B. F. Fisher. The defendant claimed to have proved that George O. Nelson was the principal, and that the plaintiff knew it. It does not appear however that that fact was known to the bank, which then owned the note. The defendant therefore claimed that demand of payment should have been made of Nelson, and asked the court so to charge the jury. The court declined so to charge, but did charge that demand of Fisher, who signed the note, was suffient.

In this the court was clearly right. It is elementary law that an agent must so contract as to bind his principal or he will be himself bound. In this case the note purports on its face to bind no one but the party who signed it. " I promise to pay, &c." The addition of the word " agent " to the name signed gives no clue to the principal. The holder at maturity knew no one as maker but Fisher. Fisher, therefore, bound himself, and demand of him was all that was required. The fact that he ceased to be the agent of Nelson before the note fell due makes no difference. His liability having attached, remains till the note is paid. It was not in his power by terminating his agency to release himself from his obligation to pay. This is not one of those cases in which one party transacts business in the name of another. It does not fall therefore within the principle recognized in *Pease* v. *Pease,* 35 Conn., 131. This case appears to be one of ordinary agency, where one man transacts business by another as his agent. The agent, to save himself from liability, must contract in the

name of his principal, or in some other mode point him out as the party contracting.

The court charged the jury that if the plaintiff, when applied to by the defendant for information before endorsing the note, represented to the defendant that Nelson was perfectly good, and was doing a good business, and that the defendant would never have any trouble if he endorsed the note; and that if the representations were untrue, and known to be so by the plaintiff when made, then their verdict should be for the defendant. The defendant excepts to that portion of the charge which relates to the knowledge of the plaintiff. Although the defendant alleged in his notice that the plaintiff knew the representations to be false, and on the trial offered evidence in support of the allegation, yet he now insists that knowledge is not essential. His claim is really this,—that if a party, when applied to for information, in good faith recommends another to be in good standing when he is not, he is bound to make it so ; a proposition sustained by no authority, and which requires none to refute it. It would be strange doctrine indeed to hold a party liable, directly or indirectly, for the consequences, if representations honestly made by him in respect to matters which did not concern him, should turn out to be untrue. When the representations are alleged to have been made the plaintiff had no interest in the note, and it does not appear, nor is it claimed, that he contemplated having any. The transaction between the parties was in most respects distinct from, and independent of, the indorsement. Although the defendant sought for information which should aid him in deciding whether he would or would not indorse the note, yet there was no understanding or agreement relating to or in any way affecting the contract implied by law from the indorsement. In *Dale* v. *Gear*, 38 Conn., 15, four classes of cases are referred to, as exceptions to a general rule, in which parol evidence may be received to vary the implied contract of an indorser. First, where the relation between indorser and indorsee is that of principal and agent. Secondly, where the indorsee holds for some special purpose, or in trust. Thirdly, where the relation between the parties is

Hall v. Bradbury.

that of principal and surety, the indorser being surety for the indorsee; and fourthly, where there is an equity arising from an antecedent transaction, including an agreement that the holder should rely solely upon the responsibility of the maker. It is not contended that this case is within any of the first three exceptions ; nor is it claimed that the antecedent transaction contained any agreement affecting the rights of the parties. If there is any controlling equity arising from this transaction, it must arise from the fact that the plaintiff was mistaken in the information given by him. It hardly requires an argument to show that no equity arises from that source which will defeat the plaintiff's rights as indorsee. It is doubtless true that a party may, by pretending to have knowledge which he does not possess, intentionally or wantonly mislead another to his injury, and thereby render himself liable. But that is not this case. The plaintiff made no pretension to knowledge or means of knowledge not possessed by others, and the case discloses no intention or design on his part to induce the defendant to indorse the note. The supposition that he was disinterested, and acted in entire good faith, is consistent with all that is claimed against him. Indeed it may well admit of doubt whether all that was said by the plaintiff respecting Nelson's responsibility was not merely an expression of opinion. That part of it relating to the future was clearly so ; and if the defendant understood the other part, as he might have done, in the same sense, there is still less ground, if possible, for sustaining the defendant's claim. Whether this is so or not, the language used does not import a warranty. These considerations also show that it is not a case for the doctrine of estoppel.

A new trial must be denied.

In this opinion the other judges concurred.