FRANK H. JOHNSTON, TRUSTEE, vs. FORTIS H. ALLIS.

First Judicial District, Hartford, October Term, 1898. ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

Section 1947 of the General Statutes prohibits any joint stock company
organized under our laws from commencing business until all of its
capital stock has been subscribed for by *bona fide* subscribers. *Held*
that this imported a real subscription, such an one as would bring
to the corporation the amount of capital specified, and upon which
its creditors could rely; and that a subscription by one as "trus-
tee" for the corporation about to be formed, added nothing what-
ever to its capital, and could have no effect at all unless treated as
the personal obligation of the subscriber.

In the case at bar the defendant, pursuant to an understanding with the
other stockholders of a joint stock company about to be created,
subscribed in his own name as "trustee" and for the benefit of
the company, for one half of its capital. Shortly afterwards, as
one of the officers of the company, he signed, published and caused
to be recorded the certificate of its organization, which set forth his
subscription with the others. No payment upon this subscription
was made or called for. Subsequently the company became insol-
vent, and the plaintiff as its trustee in insolvency demanded from
the defendant enough money upon his subscription to pay the debts
of the company, but did not state what the amount of the debts were
or ask for any specific sum. The defendant refused to pay anything
whatever. Upon a complaint to recover the full amount of this sub-
scription it was *held:*—

1. That as against the plaintiff who represented creditors of the com-
   pany, the defendant could not be permitted to deny personal lia-
   bility upon his subscription, whether such liability be regarded as
   arising directly from the subscription, or by way of estoppel.

2. That the defendant's refusal to pay anything at all upon his subscrip-
   tion placed him in no position to object to the want of precision in
   the plaintiff's demand.

3. That although the complaint claimed the full amount of the unpaid
   subscription, a recovery might nevertheless be had of such smaller
   sum as the evidence showed was necessary to discharge the indebt-
   edness; and that to establish the amount of the assets and liabili-
   ties the inventory and commissioners' report were admissible in
   evidence.

The case of *Russell* v. *Bristol*, 49 Conn. 251, commented on and distin-
guished.

Section 519 of the General Statutes provides that trustees in insolvency
shall have the same power to call for and collect unpaid capital as

the directors of the insolvent corporation would have had, "and may proceed in such manner and to such an amount as the Court of Probate may direct." *Held* that the fact that the Court of Probate had made no order in the premises, constituted no defense in the present action, since the statutory regulation as to procedure was merely cumulative and did not prevent the trustee in insolvency from enforcing the defendant's liability by any appropriate legal or equitable remedy.

Argued October 5th—decided November 29th, 1898.

ACTION to recover the amount of a stock subscription, brought to the Superior Court in Hartford County and, after certain rulings upon demurrers had been made by *Elmer* and *Prentice, Js.*, favorable to the defendant, tried to the court, *Ralph Wheeler, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff for alleged errors in the rulings of the court. *Error and new trial granted.*

The complaint alleges that the plaintiff is the trustee in insolvency of the Yale Brick Company, a corporation organized under the joint stock laws of this State, with a capital of $100,000 divided into 1,000 shares of $100 each; that the defendant subscribed to 560 shares of this stock; that he had not paid for them, although payment had been demanded; that the Yale Brick Company had been duly declared insolvent by the Court of Probate; and claimed to recover the amount of the subscription.

The defendant made two defenses, the first being in substance a denial of the complaint. The second set out that of the said shares the defendant had paid in full for fifty. Ten shares had been paid for in another way. As to the remaining 500 shares, the defense averred that they "were subscribed for by him not in his individual capacity, but as a trustee for said corporation by and with the authority of said corporation, and were never held by the defendant otherwise than as such trustee and subject to the vote of the stockholders of said corporation."

This defense was demurred to by the plaintiff and the court overruled the demurrer. Thereupon the plaintiff made replication "that the creditors represented by him had no notice

of any kind that said subscription was for said corporation; " also that on the 14th day of October, 1892, the defendant, as one of the directors of said corporation, joined with the other directors in making, executing and filing with the secretary of state of this State, a certificate of the articles of association of said corporation, which stated among other things, the following: "Article 4. The amount of the capital stock is one hundred thousand (100,000) dollars, divided into one thousand shares of the par value of one hundred (100) dollars each. Article 5. Each subscriber to these articles agrees to take the number of shares of said capital stock annexed to his name, each share to be of the par value of one hundred dollars, and to pay twenty per cent. thereof in cash at the time of subscription, and the balance thereof in instalments as called for by the directors." Then followed a list of the names and residences of the subscribers to the capital stock, in which appeared the name of the defendant in this form:

"F. H. ALLIS, Trustee, New Britain, 510 shares."

The reply further alleged that the defendant also joined the other directors "in filing a like copy with the town clerk of the town of Berlin, and publishing the same in a newspaper, as is required by the statutes of this State relating to the formation and organization of joint stock companies "; and then proceeded as follows: —

"4. Immediately thereafter the said company commenced business in said town of Berlin and continued there until, in the conduct of said business, said company had contracted certain debts which were and still are unpaid, and the same have been presented to and allowed by the commissioners on the insolvent estate of said company, as per Exhibit B filed herewith. During all of the time that said company was doing business the defendant was a member of the board of directors thereof, was secretary and treasurer of said corporation, and was at all times active in the management thereof. 5. Said creditors were induced thereby to deal with said company and give credit to said Yale Brick Company as a corporation lawfully authorized to do business.

5½. The assets of the estate of said Yale Brick Company are not sufficient to pay the said claims mentioned in said Exhibit B, nor any part thereof."

There was a demurrer to this replication which the court sustained, but no further pleading.

Upon a hearing on the issues of fact the court found them in favor of the defendant, and rendered judgment that the defendant recover his costs. From this judgment the plaintiff appealed. The 3d, 4th, 5th and 6th paragraphs of the finding of facts are these : —

"3. The subscription of F. H. Allis as trustee, was made by him on said 14th day of October, 1892, by authority of the stockholders of the new company for the benefit of the company, and no instalment upon said stock was ever called in by the directors of said company, but by a vote of the company said Allis was directed to sell ten (10) shares of said stock of the par value of $1,000 for the benefit of the company, which he did, and the amount realized from said stock, to wit, the sum of $1,000, was paid by him into the treasury of said company for its benefit.

"4. On the 12th day of October, 1896, said Yale Brick Company was, upon proper proceedings, duly declared insolvent by the Court of Probate for the district of Berlin, and on the same day the plaintiff was duly appointed trustee upon the insolvent estate of said corporation.

"5. Before the service of the writ in this action the plaintiff, as trustee of said Yale Brick Company, called upon the defendant and demanded from him enough money upon his subscription to said capital stock to pay the debts of the Yale Brick Company, but he did not state what the amount of those debts were, nor did he ask for any specific sum. The defendant refused to pay anything upon said demand.

"6. It was admitted upon the trial that neither the trustee nor any one in his behalf had made application to the Court of Probate for the district of Berlin, for any order to call for and collect unpaid capital of said Yale Brick Company, and that said Court of Probate had not given any direction as to the calling in of any of said stock."

*Noble E. Pierce* and *Bernard F. Gaffney*, for the appellant (plaintiff).

It is elementary law that an agent must so contract as to bind his principal or he will be himself bound. *Hall* v. *Bradbury*, 40 Conn. 37; *Sterling* v. *Peet*, 14 id. 245. This doctrine is particularly applicable to stock subscriptions. *Griswold* v. *Seligman*, 72 Mo. 110; *Johnson* v. *Laflin*, 5 Dill. 65. The corporation could not authorize the subscription, because at the time the corporation had no existence. Gen. Stat. § 1944. Where an agent contracts for and on behalf of an irresponsible principal, that is, a principal who possesses none of the elements or attributes of legal entity and cannot therefore be impleaded in law, he will be personally liable on the contract. 1 Amer. & Eng. Ency. of Law (2d ed.), 1122, citing *Murphy* v. *Helmrich*, 66 Cal. 69; *Hastings* v. *Lovering*, 2 Pick. 214; also a long list of cases from Missouri, and *Timken* v. *Tallmadge*, 54 N. J. L. 120, and *Booth* v. *Wonderly*, 36 id. 255. The same rule applies where the contract is signed by one who professes to be signing as agent, but who has no principal existing at the time, and the contract would be wholly inoperative unless binding upon the former. The defendant will probably rely upon the case of *Russell* v. *Bristol*, 49 Conn. 251. We venture to assert that the court never intended by that opinion to lay down the doctrine that joint stock corporations might be formed by subscriptions that were not in good faith and that represented nothing but the corporation which was thereafter to be formed. Such conduct as to joint stock corporations would seem to be prohibited by the statute. Gen. Stat. § 1947. See also *Crandall* v. *Lincoln*, 52 Conn. 97; *Canfield* v. *Gregory*, 66 id. 18. Under the well-settled rules of law as to the responsibility of subscribers to the capital stock of corporations, the defendant's liability upon his subscription is a logical necessity. Cook on Stock and Stockholders, §§ 166, 199, 210, 245, 246, 251; 23 Amer. & Eng. Ency. of Law, 855; *Davis* v. *Essex Baptist Soc.*, 44 Conn. 586. A joint stock company cannot buy its own stock except in special cases. *Crandall* v. *Lincoln*, 52 Conn.

99.   Creditors of a corporation are entitled to· hold every legal owner of shares liable as shareholders, without regard to equities existing between him and third persons, and may enforce not only the liability of such shareholder to contribute the portion of capital subscribed by him to the company, but also any further liability to creditors imposed by statute. 2 Mora. Corp. § 852; 1 *Howes' Case*, 2 John. & H. 229; *Buggs' Case*, 2 D. & Sm. 452; *Williams' Case*, L. R. 1 Ch. D. 576; *Mitchell's Case*, L. R. 9 Eq. 363; *Kiny's Case*, L. R. 6 Ch. 196.   The action was properly brought.   *Mann* v. *Cook*, 20 Conn. 187; *Litchfield Bank* v. *Peck*, 29 id. 388; *Buck* v. *Ross*, 68 id. 29.   Stock calls are unnecessary where the corporation has passed into the hands of·a trustee, even though the charter requires calls to be made by the directors.   *Hatch* v. *Dana*, 101 U. S. 205; *Henry* v. *Railroad Co.*, 17 Ohio, 187; *Lewis* v. *Glenn*, 84 Va. 847.   It was not necessary to allege that the creditors named gave credit, etc., by reason of the statements contained in the certificate of organization.   *Canfield* v. *Greyory*, 66 Conn. 22.

*Frank L. Hungerford*, for the appellee (defendant).

The plaintiff had no cause of action, and could have none until the Court of Probate had made an order for the collection of any unpaid capital stock of the insolvent corporation. Gen. Stat. § 519; *New Haven* v. *Whitney*, 36 Conn. 373.   In the case of *Canfield* v. *Greyory*, 66 id. 9, no question was raised as to the necessity of action by the Court of Probate, and, moreover, it appears in that case that the directors, prior to suit, had called in an assessment upon the defendant's stock; a fact which was set up in the complaint.   Our statute leaving it to the Court of Probate to direct a trustee as to calling in unpaid stock, is in line with the authorities upon the same subject.   Gluck & Becker on Recv. (2d ed.) 188; *Curry* v. *Woodward*, 53 Ala. 371; *Ward* v. *Griswoldville Mfg. Co.*, 16 Conn. 593; *Van Hook* v. *Whitlock*, 3 Paige (N. Y.), 409; *Salisbury* v. *Black*, 6 Har. & J. (Md.) 293; *Sinkler* v. *Turnpike Co.*, 3 Pa. 149; *Walter* v. *Walter*, 1 Whart. (Pa.) 292; *Quigg* v. *Kittredge*, 18 N. H. 138; *Nimmo* v. *Walker*,

14 La. Ann. 581; *Scoville* v. *Thayer*, 105 U. S. 143, 155. It is very clear, under the authority of *Russell* v. *Bristol*, 49 Conn. 251, that the directors could not have called in this stock; and therefore the Court of Probate could not have ordered it called in. The demurrer was properly overruled. The plaintiff manifestly could not sustain an action against the defendant upon any subscription made by him, upon the allegations of his complaint. There was no allegation of any action by the Court of Probate as to calling in stock; of insufficiency of assets in the hands of the trustee to pay creditors; of debts due from the insolvent debtor; of any call or assessment upon the stock, or of any acts which would estop the defendant from setting up the fact that the subscription made by him was a trust subscription. Moreover, the case of *Russell* v. *Bristol, supra,* was sufficient authority for overruling the demurrer, in the absence of any allegations estopping the defendant from setting up the fact that his subscription was a trust one for the company. The defendant in setting up the trust nature of the subscription as a defense to this action, is not setting up a fact inconsistent with the organization certificate. The fact undoubtedly is that the creditors named knew nothing about the certificate, and did not deal with the corporation upon the faith of it or upon the faith of any subscription made by the defendant individually or otherwise. The plaintiff makes no such claim in his pleadings, as he surely would have done had the facts warranted it. He only says the creditors were induced by the certificate to deal with the company and give credit to it as a corporation legally authorized to do business. The plaintiff does not claim that the subscription upon which he seeks to hold the defendant was anything other than what it purports to be, a trust subscription. If, then, the plaintiff or the creditors whom he represents, have any remedy against the defendant, it is not by way of this action, but by some other, setting up the true claim of those creditors, *viz.,* that the defendant with others, commenced to do business without *bona fide* subscriptions to the whole amount of the capital stock of the corporation, and that in consequence of such illegal action, they suffered

injury. Whether they have suffered any injury traceable to such action, we need not here discuss.

ANDREWS, C. J. The defendant subscribed for five hundred shares of the capital stock of the Yale Brick Company, adding to his name the word "trustee." Nothing has ever been paid on these shares by the defendant or any one else. Afterwards the company was formally organized, and the defendant was chosen one of the directors and its secretary and treasurer; and he has at all times been active in the affairs of the company. This subscription and the organization of the company took place on the 14th day of October, 1892. On the same day the defendant, the other directors of the company acting with him, made, subscribed and swore to a certificate of the organization of the said company, and filed the same in the office of the secretary of this State and with the town clerk of the town of Berlin, and also caused the same to be published in a newspaper in Berlin. In that certificate this subscription is stated to be one of the subscriptions to the capital stock of said company, as indeed it must be, because otherwise the whole of the capital stock is not subscribed for. In his defense the defendant averred that he made the said subscription as the trustee for and with the authority of the said corporation, and that he was not personally liable on the same. The court, on demurrer, held this to be a good defense to the action brought by the plaintiff.

This subscription was made before the corporation was organized. It is a little difficult to see how it could at that time appoint a trustee for any purpose.

But as to the trusteeship of this subscription there is another and still stronger objection. It was not a *bona fide* subscription. The statute, General Statutes, § 1947, forbids any joint stock corporation to commence business until all its capital stock shall be subscribed for by *bona fide* subscribers. A *bona fide* subscriber means a *bona fide* subscription, that is, a real subscription, one that will in fact bring to the corporation the amount of capital which the subscription denotes, and upon which its creditors and all persons

dealing with the corporation can rely.   Any subscription that will not do this is not a *bona fide* one.

A corporation has at its organization no property other than the subscriptions to its capital stock.   From the nature of things it can have no property of its own separate from the subscriptions.   A subscription to its capital stock made by a trustee, if it does not bind the trustee but only the corporation itself, would not be a *bona fide* one.   Such a subscription could not bring to the corporation any real capital. This subscription was one which the corporation as matter of fact could not have made, because at the time it was not organized so that it could appoint a trustee.   And besides, it was a subscription which as matter of law it was forbidden to make.   It did not and does not bind the corporation.   *Crandall* v. *Lincoln*, 52 Conn. 73, 94; Cook on Stock and Stockholders, §§ 199, 251.

Did this subscription then bind the defendant?   It is said in 1 Swift's Digest, side page 330, that "whenever a person signing a contract makes use of an addition, such as Treasurer of the Jockey Club, Guardian, Executor, or [the title] of any office, civil or military, in which he has no power to bind another, the contract will be binding on himself, and the addition rejected as surplusage."   Where an agent contracts for and on behalf of an irresponsible principal, that is, a principal who has no legal capacity, then the agent is responsible personally.   1 Amer. & Eng. Ency. of Law (2d ed.), 1122.   "It is elementary law that a agent must so contract as to bind his principal, or he will be himself bound." *Hall* v. *Bradbury*, 40 Conn. 32, 37; *Pierce* v. *Johnson*, 34 id. 274.   It is always presumed that persons intend to do effectually that which they contract; and where there is a conflict of construction, the parties are presumed to adopt that construction most favorable to the performance of their engagement.   Therefore where the only way of enforcing a contract entered into by an agent is by making him liable, his liability will be assumed, provided it does not appear that it was intended in the transaction that he should not be liable. Wharton on Agency, § 523 ; *Kelner* v. *Baxter*, L. R. 2 C. P. 174, **183.**

The defendant, over his own signature as an officer of the said corporation, declared this subscription to be a real one. He emphasized this statement by his oath.  He took part in putting this statement so verified on the records of the State in the office of the secretary of state, and on the records of the town of Berlin in the office of the town clerk of that town, and in causing that verified statement to be published in a newspaper.  In these ways he invited the attention of the public to this corporation, and declared to all persons who should deal with it that this subscription furnished so much real capital on which they might rely if they should become its creditors.  It is stated in the record that the creditors of the corporation did rely on these acts of the defendant, and were induced thereby to deal with the corporation and to become its creditors ; and it also appears that the assets of the corporation — other than this subscription — are insufficient to pay any part of their claims.  It seems to this court that the defendant cannot, as against the plaintiff who represents these creditors, be heard to deny that his said subscription is binding upon him.  *Canfield* v. *Gregory*, 66 Conn. 9.  Whether we regard the liability as one resting upon the defendant directly by the subscription, or as one cast upon him by way of estoppel, it makes no difference.  In either way, indeed in both ways, he is liable on it.  2 Morawetz on Corporations, § 818.

The case of *Russell* v. *Bristol*, 49 Conn. 251, is not an authority in favor of the defendant's contention.  In that case the defendant, Mr. Bristol, had, after the capital stock of the corporation had all been taken, subscribed for some additional stock, affixing to his name the words, " Treasurer, in trust." At a later time the organization of the corporation was fully completed.  After such complete organization and while the corporation was wholly solvent, it dealt with Mr. Bristol on the basis that he was not the owner of the said shares at all, but that the corporation was itself the owner of them.  As between the corporation and Mr. Bristol, such dealing was a ratification of the original subscription and cured any infirmity there was in it.  The subscription was then vacated by

the vote of the directors, and never was included in any return made by the company to the insurance department. All this took place before the corporation had incurred any of the liabilities which existed at the time of its assignment. The case, then, became one where a solvent corporation was the owner of shares of its own stock by way of surplus; the shares standing in the name of a trustee. As the corporation had at that time incurred no liability and had never made any return representing that it had a capital including the amount of these shares, there could be no claim that any person had relied on this subscription in giving credit to the corporation. The receiver had no claim therefore upon Mr. Bristol, the trustee.

The defendant claims that the facts of this case do not show a cause of action against him, for the reason that the Court of Probate had made no order in the premises according to the provision of § 519 of the General Statutes; and he cites the case of *New Haven* v. *Whitney*, 36 Conn. 373. That was a case where the charter of the city of New Haven was under discussion. The charter of a city is an enabling Act, and when in such an Act an authority is given which would not exist except for the Act, and the Act prescribes that a thing shall be done in a particular way, there is an implied prohibition against doing that thing in any other way. *Expressio unius, exclusio alterius.* But when the power to do a thing exists and may be exercised according to the usual methods of law or equity, and the statute is only by way of regulation or enlargement of the power, then there can be no implied prohibition of the power, or to the way it is to be enforced. Section 519 is this kind of a statute. The insolvent law provides that all the property of the debtor shall vest in the trustee, and that the trustee may sue in his own name for choses in action. *Hart* v. *Stone*, 30 Conn. 94; *Stanton* v. *Lewis*, 26 id. 444. The case of *Mann* v. *Cooke*, 20 Conn. *178, *187, was a case in which the receiver of an insolvent corporation sued to recover the unpaid balance of a subscription to the capital stock of the corporation. In deciding that case this court said, by CH. J. CHURCH: "It

seems now to be generally admitted, that all subscribers to the capital stock of a corporation, which, by its charter, may require or demand payment of the capital subscribed, have incurred a debt, which may be enforced, by any appropriate common law or equitable remedy, and that such remedy is not at all impaired, by the further provision for the forfeiture of the stock "; citing *Hartford and New Haven R. Co.* v. *Kennedy*, 12 Conn. 449; *Same* v. *Boorman*, ibid. 530; *Ward* v. *Griswoldville Mfg. Co.*, 16 id. 593. The statute, now § 519, was passed in the year 1885. The law as stated in the cases just cited, was in force long before that date. The law so stated is not at all impaired by that Act. *Litchfield Bank* v. *Peck*, 29 Conn. 384, 388; *Buck* v. *Ross*, 68 id. 29. These decisions are in line with what seems to be the law elsewhere: that the assignee of an insolvent corporation may sue in his own name for the unpaid subscriptions to the capital stock. *Webster* v. *Upton*, 91 U. S. 65; *Hatch* v. *Dana*, 101 id. 205; Thompson on Corporations, § 6469. The statutory remedy is in addition to, not exclusive of, the remedy by the trustee in his own name. Thompson on Corporations, § 6469.

It is further urged on behalf of the defendant, that no action can be maintained against him for the reason that no call has been made by the Court of Probate. The purpose of a call upon the subscribers to the capital stock of a corporation, whether made by the directors of the corporation itself or by the trustee in insolvency, who for this purpose has much the same powers as the directors of the corporation, or by the Court of Probate, is to adjudge that some part or the whole of the unpaid subscription is needed to pay the debts of the corporation, and to give notice to those subscribers who have not paid, of the amount they are to pay and of the time when they are to pay it.

The finding in this case shows that the defendant is the only subscriber to the stock of the Yale Brick Company whose subscription has not been paid in full; and that the plaintiff before the bringing of this action made demand on him for a sum sufficient to pay the indebtedness of the corporation. In strictness, perhaps, he ought to have stated the precise amount needed. Instead of this he asks generally for enough

to pay the debts. This fairly imported that he adjudged that amount to be necessary to meet the debts and expenses. But the defendant denied all liability whatever and refused to pay anything. He did not find fault with the form or the amount of the call. So far, therefore, as he is concerned, this demand fulfilled the purposes of a call. The defendant having refused to pay anything at any time, is not in a position to avail himself of any such objection. His refusal to comply with the call made upon him by the plaintiff was not because the amount or the time of payment was not stated, but on the ground that he was not liable at any time, or for any amount.

The plaintiff represents the creditors of the insolvent corporation. His duty is to pay these creditors whatever the corporation owed to them, so far as its assets will enable him to do so after paying the expenses of the insolvency proceedings. He cannot collect of a delinquent subscriber to its stock any more than is needed for this purpose. The defendant claims that what this amount is should be specially set out in the complaint. But that is a matter to be proved. A plaintiff is never obliged to prove more than the substance of his complaint. In this case the plaintiff claims to recover the whole amount of the defendant's unpaid subscription. Under that claim he may recover so much (not exceeding the whole) as the proof shows is needed to pay the creditors in full, together with the expenses of the settlement.

We think there was error in sustaining the defendant's demurrer to the amended reply to the second defense. That demurrer should have been overruled. The matters set forth by the plaintiff in the complaint and in the reply to the second defense, if proved, would entitle the plaintiff to recover. For the purpose of proving these matters the inventory and the commissioners' report would be admissible; *Bassett* v. *McKenna*, 52 Conn. 437; as well as the evidence offered by the plaintiff to prove that the assets in his hands were not sufficient to pay the expenses of the settlement of the estate.

There is error and a new trial is granted.

In this opinion the other judges concurred.