## Isaac Fleischer *vs.* Louis Wein.

Third Judicial District, Bridgeport, October Term, 1917.
PRENTICE, C. J., RORABACK, WHEELER, BEACH and SHUMWAY, Js.

The question to whom a vendor of goods extended credit, is one of fact, and its determination by the trial court is final unless the conclusion reached is legally inconsistent with the subordinate, evidential facts, or is one which could not reasonably be drawn from them.

In the present case the trial court found, upon conflicting evidence, that credit had been given by the plaintiff to the defendant's father, who owned the store when and where the goods were sold and delivered, and not to the defendant himself. *Held* that this conclusion was not inconsistent with the evidential facts, nor was it an unreasonable deduction from them.

Argued October 31st, 1917—decided January 22d, 1918.

ACTION to recover for merchandise alleged to have been sold and delivered to the defendant, brought to and tried by the Court of Common Pleas in Fairfield County, *Walsh, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff. *No error.*

The defendant, a resident of Greenwich, was, for a period of time prior to July 29th, 1915, the owner of a grocery store in that town, which, until sometime in May, 1915, he personally conducted. In May, 1915, he accepted employment as a chauffeur, and the store was then conducted by his brothers. July 29th, 1915, he made a bona fide sale of the business, for valuable consideration, to his father, Abraham Wein, who thereupon took it over and carried it on. On July 9th, 1915, a statutory notice of intent to sell was filed by the defendant in the town clerk's office of Greenwich, and the bill of sale given by him to his father on the 29th was recorded the next day. In August, 1915, the defendant, while still acting as chauffeur, broke his leg, and was compelled to give up his employment in that capacity.

On or about September 15th, having recovered suffi-
ciently from his injuries, he entered into his father's
employment as manager of the store, at an agreed wage
of $15 per week. During all the time from July 29th,
1915, until his return to the store about the middle of
September, he had nothing whatever to do with its
conduct. After the middle of September he continued,
through the whole period covered by the transactions
involved in this case, to conduct the store as his father's
agent and in his father's pay. The latter lived and car-
ried on another business in the adjoining town of Port
Chester, New York. He was unfamiliar with the con-
duct of a store, and did not participate personally in
the conduct of the one he had purchased from his son.

The plaintiff was a baker. Early in November, 1915,
he for the first time sold and delivered certain goods to
the store in Greenwich, and continued to do so until
sometime in February, 1916. The total amount of
his sales so made was $137.83. Of this amount $25 was
paid to the plaintiff by Abraham. The remainder has
not been paid. The goods were ordered by the defend-
ant in charge of the store, and the same were entered
upon the plaintiff's books as charged as follows, to wit,
the first two pages of entries to "Wein," "Greenwich,"
and the remainder to "Louis Wein." All bills con-
tracted in the conduct of the business at the store were
paid either by checks of Abraham Wein or by cash taken
in at the store.

The store bore no sign, inscription or notice indicating
to whom the business belonged. During the time cov-
ered by the plaintiff's sales, or at least some portion of
it, the name of Louis Wein appeared in both the general
and telephone directories of Greenwich as the pro-
prietor of the store, but it was placed therein before
the sale, and when Louis was the proprietor. In the
store at the time of sale were certain blank order slips

with the name of Louis Wein thereon. These slips were, for reasons of economy, used subsequent to the sale as receipts for goods delivered, and such receipts were given to the plaintiff. The plaintiff made no examination of the records in the town clerk's office, and no evidence was given of representations made by either Louis or Abraham as to the ownership of the store. Demand for payment of the plaintiff's bill was made by him of Abraham personally, he having gone to the latter's house in Port Chester for the purpose. In March, 1916, Abraham was adjudicated a bankrupt. The plaintiff extended credit to the owner of the store and not to Louis.

*Robert R. Rosan,* for the appellant (plaintiff).

*Frederick G. Schmidt,* for the appellee (defendant).

PRENTICE, C. J. The plaintiff seeks recovery for goods sold and delivered by him, upon order, to a store in Greenwich. Abraham Wein, the defendant's father, was the proprietor of this store. The defendant, during the whole period covered by the plaintiff's dealings with it, had no other connection with it, or interest in the business there carried on, than as his father's agent in its management. He cannot, therefore, be held liable for the plaintiff's account, a rightful charge against his father, unless the goods whose sale and delivery furnish the basis of it, were sold and delivered upon the defendant's credit.

The court has found that the plaintiff, in his transactions with the store, extended credit to its owner, the defendant's principal, and not to the defendant. This is a finding of fact. If it is to stand, the judgment exonerating the defendant from liability necessarily follows. It must stand unless as an ultimate fact it is

inconsistent with the subordinate evidential facts which are found, or its deduction from those subordinate facts was one which could not reasonably be made.

We are unable to discover such inconsistency or unreasonableness, especially in view of the facts that the only credit appearing upon the plaintiff's account was for a payment made by Abraham, and that the plaintiff sought out Abraham to make personal demand of him for payment of the balance due. In the face of these facts, strongly suggestive of the plaintiff's knowledge of Abraham's proprietorship and of a giving of credit to him, a trier might reasonably regard the other facts upon which the plaintiff relies, as furnishing less convincing indications as to the person, whether the principal or the agent, upon whose credit the sales were made. The original entry in the plaintiff's books is as readily explainable upon the theory that it was used to indicate the place of business, as of the place of residence of its proprietor, and the use of the order slips was an incident of the transactions with the plaintiff entirely consistent with knowledge of the true proprietorship. The absence of a sign possesses only such negative significance as arises from an absence of a representation of ownership by that method, and the directory entries, speaking the truth when made, possess no importance touching the plaintiff's knowledge, since it does not appear that they ever came to the plaintiff's notice.

There is no error.

In this opinion WHEELER, BEACH and SHUMWAY, Js., concurred.

RORABACK, J. (dissenting). I am unable to agree with the conclusion just announced, although it may

be conceded that the defendant purchased the goods in question as agent.

It is well settled that it "is the duty of the agent, if he would avoid personal liability on a contract entered into by him on behalf of his principal, to disclose not only the fact that he is acting in a representative capacity but also the identity of his principal, as the person dealt with is not bound to inquire whether or not the agent is acting as such for another." 2 Corpus Juris, p. 816, § 491, with notes; 2 L. R. A. 811, 812, notes bottom of pages; 47 L. R. A. (N. S.) 232, 234, notes bottom of pages; *Hall* v. *Bradbury*, 40 Conn. 32; *Merrill* v. *Kenyon*, 48 Conn. 314; *Johnston* v. *Allis*, 71 Conn. 207, 215, 41 Atl. 816.

It is not claimed that the defendant gave any express notice of his agency to the plaintiff; neither does it appear that there was anything in the attendant circumstances from which the plaintiff could have fairly inferred that the defendant was not conducting the business of the Greenwich store in his own name and behalf. He was residing in Greenwich, Connecticut, where the store was located, and was in the absolute control and possession of the place of business where the goods were sold and delivered. His father, Abraham, at this time was living and carrying on a different kind of business in Port Chester, New York. There were no indications, by signs or otherwise, on or about the store, that the father was interested in the business at this place, when these goods were purchased, and there was no intimation or suggestion from anyone that there was any agency or that the purchases were for Abraham.

Upon the other hand, it is distinctly found that in making these purchases, the defendant used slips with his own name thereon, which were filled out by him and given to the plaintiff as receipts for his goods.

It is well known that telephone and city directories are the sources generally relied upon for information as to the locations of different branches of business and the owners thereof. It appears that when the transactions now under question were being carried on in Greenwich, the defendant's name appeared in both the city and telephone directories of Greenwich as proprietor of this store. The defendant should not be relieved from liability because the plaintiff failed to make an examination of the land records of the town of Greenwich. It is true that one who purchases land without making an examination of the registry of deeds is presumed to be negligent. This case does not concern the matter of titles, and we have seen the defendant was not bound to make any inquiry. If there were any duty resting on the plaintiff in this connection, it is plain that he acted with due diligence.

It appears that the goods were charged to the defendant and not to the father, Abraham. The finding shows that in the plaintiff's books, which appeared in evidence, the first two pages of the entries of this account for merchandise were charged to "Wein, Greenwich." This clearly was Louis, the defendant, then living in Greenwich, where the store was located, and not his father, Abraham, who lived and was doing business in Port Chester, New York. The remaining pages of the account for merchandise were regularly charged to "Louis Wein."

The facts found do not show that the only credit upon the plaintiff's account was for a payment made by Abraham, by his check. As the finding reads, the most that can be claimed relative to this payment is that it was made from cash taken in at the store, or by Abraham's check. It is fair to infer that if this payment had been made by check, the court below would so have found in no uncertain terms. At least the

date would appear when the check was given, which was the best evidence upon this subject. It is obvious that if this payment was made with cash from the store, which was in the control and under the management of the defendant's son, the matter of payment would be of no value as evidence for the defendant. It is not possible to attach any significance to the alleged payment on account, or to the demand made for the balance unpaid, as it does not appear when these facts occurred. It is almost unnecessary to state that if this were done after the goods in question had been sold and delivered, after the transaction had been practically closed, and when the defendant's liability had been established, these facts would not furnish the defendant any relief from his liability. A payment or demand before a liability had been established may be one thing, and like conduct after the goods had been sold and delivered might be quite another.

From the special facts found, the trial court inferred that the plaintiff extended credit to the owner of the store, and not to Louis. Such an inference cannot be legally drawn from the facts set forth in the finding. In the light of these facts, the only reasonable inference was that credit was given to the defendant, Louis Wein, as the apparent owner of the store where these goods were sold and delivered. A memorandum of decision may "be resorted to as indicating a conclusion of law controlling the decision." *Rogers* v. *Hendrick*, 85 Conn. 260, 267, 82 Atl. 586; *Phœnix Ins. Co.* v. *Carey*, 80 Conn. 426, 433, 434, 68 Atl. 993. In this connection it is of interest to quote from the memorandum of decision, made a part of the record in this case, in which the trial court states that the plaintiff, "evidently, did not inquire as to the ownership of the store, nor did he know, apparently, if you judge from the record evidence, to wit, his first charges in the book, who owned

the store, except that it was owned by a Wein and it doesn't appear that he ever made any inquiries, nor that he was ever told by anybody that the defendant owned that store or claimed to own the store, and, when he brought the action in the present suit, he made no inquiries but simply assumed, on the strength of what he had seen, that the defendant and not his father was the owner of the store."

It is apparent that the trial court in its decision acted upon the theory that it was the plaintiff's duty to make inquiries, and that he could not rely upon the strength of what he saw. Such is not the law.

Aside from this, if we assume that the trial court properly reached the conclusion that the plaintiff extended credit "to the owner of the store," this would not absolve the defendant from liability. In other words, it appears from the finding, as it now reads, that the defendant is personally liable from his own showing. It is fair to assume that the finding of the court as to the matter of extension of credit by the plaintiff is as broad and comprehensive as the disclosure upon which the conclusion upon this subject is predicated. When so considered, it appears that the substance of the disclosure made by the defendant was only to the effect that he was acting as agent "for the owner of the store." Such a disclosure falls far short of the naming of the principal in the sense that the law requires. It is a universal rule that it is not sufficient that the third person has knowledge of facts and circumstances which would, if reasonably followed by inquiry, disclose the identity of the principal; actual knowledge on his part of the principal's identity is necessary to exonerate the agent. 2 Corpus Juris, 820.

The disclosure claimed to have been made by the agent in this case is too indefinite to exonerate him

from liability. The owner of the store could not sue or be sued without naming him.

In the language of an eminent jurist: "It is impossible to suppose, that the other contracting party is willing to enter into a contract, exonerating the agent, and trusting to an unknown principal, who may be insolvent or incapable of binding himself." Story on Agency (8th Ed.) § 267, p. 339.

It follows from what I have said that I cannot concur in the majority opinion that there is no error.