[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION AS TO JUDGMENT
Pro se plaintiff.
Moller, Horton Sheilds for defendant.
I.
At trial the following facts established in February 1989 the defendant Paul Hudon was appointed conservator of the Estate of Helen Benny by the Newington Probate court. The plaintiff Mrs. Zanoni, as buyer, and the conservator acting as seller entered into a sale and purchase agreement for the sale of the so-called Brightwater property on June 2, 1989. The sale of the property had been authorized by the probate court. Mrs. Zanoni made a 10% down payment of $16,500 pursuant to the contract terms. The contact stated the down payment would be forfeited as liquidated damages in the event Mrs. Zanoni did not pay the balance of the purchase price at closing. The contract stated time was of the essence. The plaintiff did not tender the balance of the purchase price on the closing date of July 17, 1989 or at any time before the death of Mrs. Benny on August 7, 1989 which terminated the defendant's conservatorship. Mrs. Zanoni's position at trial was that a prerequisite of her obligations under the contract was the ability of the seller to deliver marketable title to her and she presented evidence to try to establish that she was not offered marketable title.
On September 12, 1989 the defendant filed his final account as conservator with the probate court listing the $16,500 as an asset of the estate. On September 25, 1989 the plaintiff was approved as executrix of the Estate of Helen Benny pursuant to her mother's will and on November 1, 1989 the probate court approved the final account of the conservator. The plaintiff appealed the final account and the appeal was dismissed in January of 1991. On March 27, 1991 the plaintiff was removed as executrix nd [and] someone else CT Page 8669 was appointed as administrator. On August 5, 1991 the defendant transferred the $16,500 to the administrator from his client's funds account.
The plaintiff brought this action in six counts seeking money damages for unjust enrichment, breach of contract, and conversion against the defendant as conservator of the Helen Benny Estate and individually. The seventh count is against the administrator of the estate requesting declaratory judgment relief. The defendant filed a counterclaim for abuse of process and claimed money damages.
 II.
Whether the plaintiff is entitled to relief on her breach of contract claim in this action depends on whether she can bring suit against the defendant in his individual capacity and as conservator.
The court will now summarize its position on whether the defendant can be sued as an individual. It should be noted that when the court considered this matter at trial, over eighty pages of transcript addressed this issue. The court would refer to the numerous cases cited and discussed by counsel and the court and the reasoning of the court reflected in the transcript.
It has been held that when an executor or administrator enters into a contract on behalf of an estate he or she incurs a personal liability since the estate is not a legal entity and cannot be an obligor to the contract, see generally, Connecticut Estates Practice, Folsom § 4.8, pp 147 et seq. The reason for this rule is said to be that it would otherwise be unfair to the party negotiating with this fiduciary since there would be no legal entity against which the contact rights could be enforced, Mitchell v. Hazen, 4 Conn. 495 (1823), Johnston,Trustee v. Allis, 71 Conn. 207, 215 (1898). When conservators over the estates of incompetent people are involved in making contracts with outside parties for the benefit of their ward it has also been said that the conservator acts as a principal and can not bind the ward or the estate, Brown v. Eggleston, 53 Conn. 111, 119
(1885). The reasoning of the cases is that the ward cannot CT Page 8670 be bound because he or she is by definition incompetent.Andrus v. Blazzard et al, 63 P. 888, 890 (Ut., 1901),Reynolds v. Garber-Buick Co., 149 N.W. 985, 988 (Mich.).
It seems to follow that if the reasons for the rule that the conservator may be held individually liable are no longer operative, the rule should no longer apply. The court believes such is the case where the conservator has received authorization from probate court and that the cases so indicate. It must also be kept in mind that conservators are a distinct legal entity and different rules apply to their situation as opposed to guardians, administrators, executors, or trustees, see Elmendorf v.Poprocki, 155 Conn. 115, 121 (1967).
The following language from Marcus' Appeal FromProbate, 199 Conn. 524 (1986) indicates, at least to the court, that a conservator is not individually liable in the type of action brought in this case:
 "The Probate Court is under an `affirmative duty' to protect the assets of an incompetent's estate. . . . The court, and not the conservator, is `primarily entrusted with the care and management of the ward's estate, and, in many respects, the conservator is but the agent of the court'" id at page 529.
 "A conservator is a fiduciary and acts `at this peril and on his own personal responsibility' unless and until his (sic) actions in the management of the ward's estate are approved by the probate court." id at page 533.
 (See Aetna Life Ins. Co. v. Clark, 30 Conn. Sup. 327, 330 (1973).
The court relied on the case of Elmendorf v. Poprocki,155 Conn. 115, 118 (1967) as a basis for both these propositions. Elmendorf makes quite explicit why the conservator cannot be held responsible in his or her individual capacity and the basis for the just cited reasoning in the Marcus case. At page 118 of Elmendorf the court said: CT Page 8671
 "A conservator has an implied power to enter into contracts on behalf of his ward's estate where such contracts involve the exercise of the express or implied powers which are granted to the conservator by statute . . . . If such contract has been previously authorized by the Probate Court, or is subsequently approved by that court, the ward's estate will be bound thereto . . . . The authorization or approval by the Probate Court, however, is essential, and without it the ward's estate is not liable."
An older case cited in Elmendorf sums up the legal considerations now being discussed rather well. InJohnston, Trustee v. Allis, 71 Conn. 207, 215 (1898) the court says:
 "Where an agent contracts for an irresponsible principal, that is, a principal who has no legal capacity, then the agent is responsible personally . . .' It is elementary law that a agent must so contract as to bind his (sic) principal, or he will be himself bound.'" (emphasis added)
In this case the probate court authorized the contract and the defendant was acting as a "mere agent" of the court regarding the contract. Following the analogy to general agency theory it is obvious that the defendant while acting as conservator was acting on behalf of the probate court which had authorized him to make this contract. The contract may have been made to benefit the ward but the defendant conservator was certainly acting at the request of a competent principal, the probate judge, in making this contract. Therefore under traditional agency law because he was so acting and had therefore the power to bind his principal he did not become liable for the nonperformance of any contract. Restatement of Agency 2d, § 328,Whitlock's Inc. v. Manley, 123 Conn. 434, 437 (1937).
Cases from other jurisdictions generally agree with the reasoning and holdings of Elmendorf and Marcus and the principles just set forth. Thus in Guardianship ofCookingham, 289 P.2d 16, 20 (Cal., 1955) the court says:
"It is generally true that a guardian is without CT Page 8672 power to bind his ward's estate to a contract unless he is authorized to do so by statute or order of the court. Without such authorization, the liability of the guardian is personal with the right to be reimbursed from the ward's estate for the expenditure if it is proper."
See also Richard v. McAtee, 105 S.E. 692, 693 (W.Va., 1921), cf Kirk v. Mullen, 197 P. 300, 301-302 (Ore., 1921), Josephv. Belcher, 74 S.W. 483 (Mo., 1934). See also Teasley v.Brenau Association, 61 S.E. 141, 142 (Ga, 1908) explicitly stating reason for individual liability of guardian in as much as guardian cannot bind the ward by a contract he or she makes, see also Jones v. Johnston, 178 P. 984, 985-986
(Okla., 1919), Forster v. Fuller, 6 Mass. 58, 59 (1808). But see Adams v. Jones, 8 Missouri 602 (1880). Nicholas v.Sargeant 17 N.E. 475 (Ill. 1888). These two cases however do not give reasoning the court agrees with, the Adams case is a paragraph long and the court is somewhat confused regarding Illinois law on this subject given the later case of Sanni Inc. v. Fiochhi, 443 N.E.2d 1108, 1111 (1983).
To the court at least the plaintiff's position comes down to the point of saying that even if an action were to lie against the estate for this breach of contract one should also be against the defendant as an individual. He could then seek indemnity from the estate. This suggestion is difficult to square with the case law indicating the defendant conservator is not personally liable and after all is just an agent of probate court. It does not make much practical sense to say that someone is not personally or individually liable but then impose on that person the burden of a lawsuit with all the time and expense that entails. What if suit against the individual is allowed and a judgment is secured for a plaintiff but when the former conservator seeks to secure indemnity from the estate there are no funds left? — What happens then to the language in the cases that if the conservator gets authorization from probate court he or she is protected? Should the estate be brought in as a necessary party to the initial lawsuit? — Then why permit the suit against the former conservator as an individual in the first place? The plaintiff had clear remedies in this matter — against the conservator while he was acting as such or by making a claim against the estate. The fact that those remedies CT Page 8673 were not pursued does not give her standing to pursue a claim against the defendant as an individual on a breach of contract theory. Judgment should be rendered for the defendant on the breach of contract claim against him as an individual.
 III.
The plaintiff has also sued the defendant individually for conversion and unjust enrichment. A conservator or other fiduciary can be sued for torts committed in the course of administering an estate and an action would lie against the conservator for unjust enrichment, AmericanSurety Co. of New York v. McMullen, 129 Conn. 577 (1943), see generally, Connecticut Estate Practice, ProbateLitigation, Folsom, § 4.9 page 150 et seq. Conversion has been defined as an unauthorized assumption and exercise of ownership rights over good belonging to another, Discovery Leasing Inc.v. Murphy, 33 Conn. App. 303, 309 (1993), Restatement of Torts Second, § 222A. For a plaintiff to recover under the doctrine of unjust enrichment the defendant must be shown to have benefited, that the benefit was not just and that failure to reimburse the plaintiff operated to his or her detriment, Burns v. Koellmer,11 Conn. App. 375, 387 (1987).
Since Mr. Hudon, the defendant was acting as an agent of the probate court in entering into this contract and in retaining the down payment after he determined the plaintiff had breached the contract, it is difficult to understand how it could be said the defendant could be held for conversion or how it could be found that he personally benefited from the retention of the money. He retained the funds in a trustees' account and turned them over to the estate where in a final accounting the probate court determined the monies were an asset of the estate.
In any event the plaintiff concedes that if in fact the downpayment became an asset of the estate no action would be against the defendant individually or as a conservator. In addressing the plaintiff's demand for declaratory relief the court has decided, as it will be soon discussed, that in fact the downpayment monies are an asset of the estate. Therefore for this reason and those previously stated the court has determined judgment must be rendered in the defendant's favor on the conversion and CT Page 8674 unjust enrichment counts brought against him individually and as conservator.
 IV.
The court believes these downpayment monies are assets of the estate and the plaintiff has no claim to these funds. In fact as will be discussed more specifically on the breach of contract claim against the defendant as conservator, all of the claims made in this case are a rather ingenious effort to circumvent ordinary probate claims procedure and avoid the consequences of not having properly appealed probate court orders.
The downpayment of $16,500 was in effect taken by the defendant Hudon as an agent of probate court, and putting aside whether or not Mrs. Zanoni had in fact breached her contract, the monies were listed as an asset of the estate. In a final accounting the probate court listed the 16,500 as an asset of the estate. From this final accounting Mrs. Zanoni appealed but the appeal was dismissed in January of 1991. In Kochuk v. Labaha, 126 Conn. 324, 329 (1940) the court said that probate court decrees should be given conclusive effect when the court was acting within its jurisdiction. The action of the probate court is a "decree" because it "is a judicial fiat or pronouncement determining a matter in controversy", Doyle v. Reardon,11 Conn. App. 297, 303 (1987). Furthermore "a final probate decree can be set aside or reversed only upon appeal" and such decrees "not appealed from . . . are conclusive." Delehanty v. Pitkin, 76 Conn. 412
(1904) at p. 420 and page 421. The plaintiff seeks to circumvent the consequences to her suit that these cases dictate by arguing that in deciding that the downpayment was an asset of the estate the probate court was not acting within its jurisdiction. The cases just cited do say the conclusive and final effect of probate court decrees is only operative if the court was acting within its jurisdiction.
The plaintiff argues that probate court cannot resolve questions of title to property, Lenge v. Goldfarb,169 Conn. 218 (1975), and then argues that the matter before the court involves the question as to who is entitled to the downpayment of $16,500. But Lenge involved a situation where a party claimed the night before a certain CT Page 8675 individual's death the decedent conveyed 960 shares of stock to her as a gift; the widow said there was no valid gift and that the shares belonged to the estate. The Lenge
court held "a probate court has no power to make final determinations of title where title is disputed." id at page 221. But the plaintiff's dispute with the estate is merely a contract claim, in fact she has brought a contract claim herself for return of the downpayment against the defendant Hudon. By the plaintiff's logic it would seem any time a person has a claim against an estate for a money amount certain he or she can argue that there is a dispute as to title as to that money and therefore resolution of ownership of the claimed amount is not within the jurisdiction of probate court. Plaintiff confuses the question of "title" determination and whether she is "entitled" to have had the monies returned to her. The latter issue is an ordinary claim against the estate on which an appeal must be taken if the probate court makes an adverse determination as to the claim. The word "title" is a term of art and it involves determining ownership of real property or chattels, commercial paper, shares etc. Lenge
involved shares of stock. Searle v. Crampton, 118 Conn. 42
(1934) for example involved a case in which the court held the probate court had no jurisdiction to determine "title" to a certificate of deposit.
The plaintiff had a right of appeal from the final accounting of the probate court listing the downpayment as an asset of the estate, § 45a-186. This declaratory judgment action is not an appeal; an appeal in fact was brought and dismissed therefore the plaintiff has no right to request the relief sought for in the declaratory judgment count, Hartford Kosher Caterers v. Gazda,165 Conn. 478, 487 (1973) nor can the probate action be collaterally attacked, Delahunty v. Pitkin, 76 Conn. at page 421. The court therefore finds that the $16,500 is in fact an asset of the estate.
The court has already ruled that the defendant can't be sued as a conservator on a conversion or unjust enrichment theory and entered judgment to that effect. The court in light of the above reasoning also enters judgment on the breach of contract claim against the defendant as conservator. The conservatorship here ended when Mrs. Benny died in August of 1989, § 45a-660 C.G.S.A., Kerin v.CT Page 8676Stangle, 209 Conn. 260, 266 (1988). That being the case if a judgment were to be returned against the conservator on any of the theories asserted including the breach of contract theory the judgment would theoretically have to be satisfied out of the estate. But the conservator turned the monies in question over to the estate after his ward's death. And the court of probate determined those monies were assets of the estate. Therefore the actions in this case against the conservator represent an improper and unauthorized appeal from the actions of probate court regarding its decision or "decree" as to this asset. This court has no jurisdiction to entertain such claims.
 V.
The defendant has brought an action against the plaintiff for abuse of process. In Mozzochi v. Beck,204 Conn. 490, 494 (1987) the court said that abuse of process claim lies against a person who uses "a legal process against another in an improper manner to accomplish a purpose for which it was not designed." Referring to the Restatement Second (1977) of Torts § 682 the court emphasizes "that the gravamen of the action for abuse of process is the use of `a legal process . . . against anotherprimarily to accomplish a purpose for which it is not designed' . . . `primarily' is meant to exclude liability `when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant'" id at page 494. As the Restatement goes on to say in Comment b "For abuse of process to occur there must be use of the process for an immediate purpose other than that for which it was designed and intended. The usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him (sic) to pay a different debt to take some other action or refrain from it."
What must be kept in mind is the distinction between an action for abuse of process and for vexatious suit. As said in Shaefer v. OK Tool Co. Inc., 110 Conn. 528, 532-533
(1930).
 "The distinction in the elements essential for recovery in each tort is that in the action for CT Page 8677 abuse of process the plaintiff is not bound to allege or prove the termination of the original proceeding nor inmost jurisdictions, the want of probable cause, while both of these must be proven in an action for malicious prosecution or vexatious suit."
See generally Connecticut Law of Torts, 3d ed, Wright, Fitzgerald, Ankerman § 162, 163 pp 432-435. The distinction between the two causes of action is made clear if one examines together Lewis Truck Trailer Inc. v. Jantreau,11 Conn. App. 168 (1987) and Schnabel v. Tyler, 32 Conn. App. 704
(1993).
There has been no evidence introduced at the trial that Mrs. Zanoni brought this action for any other purpose than to recover the downpayment of $16,500. Even if the court were to assume that the claims made were without merit or that the plaintiff did not have standing to make them or the court jurisdiction to hear them that would not present the necessary elements for an abuse of process action. The fact that the defendant spent time and money to defend the litigation doesn't transform his claim into an abuse of process action as the well-reasoned brief of the plaintiff points out citing Mozzochi v. Beck, at 204 Conn. page 497.
Also the fact that Mr. Zanoni brought an appeal contesting the authorization to sell the property by the probate court cannot form the basis of an abuse of process claim by the defendant against Mrs. Zanoni. The defendant was not a party to that appeal in his individual capacity and if any claim lies it would be against Mr. not Mrs. Zanoni. For all of these reasons judgment should be granted in favor of the plaintiff on the abuse process count.
Corradino, J.